**WOODWARD & LOTHROP, INC.,**
Appellant,

v.

**DISTRICT OF COLUMBIA UNEMPLOY-
MENT COMPENSATION BOARD**
and John L. Harris, Appellees.

No. 20048.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 13, 1966.

Decided Jan. 11, 1968.

Mr. John J. Ross, Washington, D. C., with whom Mr. Pierre J. LaForce, Washington, D. C., was on the brief, for appellant.

Mr. James M. Portray, Jr., Attorney, District of Columbia Unemployment Compensation Board, with whom Messrs. F. G. Gordon, Jr. and George A. Ross, Attorneys, District of Columbia Unemployment Compensation Board, were on the brief, for appellee, District of Columbia Unemployment Compensation Board.

No appearance was entered for appellee Harris.

Before DANAHER, BURGER and McGOWAN, Circuit Judges.

DANAHER, Circuit Judge.

This case involves the District of Columbia Unemployment Compensation Act.[1] The appellee Board had determined that one John L. Harris as claimant was eligible[2] for benefits. The appellant as "most recent employer,"[3] having exhausted administrative remedies, unsuccessfully sought review in the District Court, and here contends that summary judgment was erroneously entered

for the Board. Basically the appellant argues (1) that there had been no showing of record that Harris was available for work and hence was not eligible to receive benefits; and (2) that the Board's finding of such eligibility was not "supported by evidence."[4]

The essentiality of appropriate findings, supported by evidence, cannot be doubted as will be discerned from our opinion in AEM, Inc. v. Ecke, 106 U.S. App.D.C. 240, 271 F.2d 506 (1959). There an unemployed rug seamstress had actively sought employment among the seven or so possible employers in this area, as the record showed in support of the Board's finding as to the claimant's eligibility.

■ Here a very different situation appears. Harris had been employed as a hotel credit manager[5] from October 1, 1963 to September 30, 1964, receiving base period earnings of some $6,330. He entered upon temporary employment with the appellant on November 24, 1964, as a salesman at a pay rate of $1.15 per hour. His employment terminated on December 26, 1964.[6] On February 25, 1965, Harris initiated his claim for un-

1. Ch. 794, 49 STAT. 946, et seq. (1935), as amended, D.C.CODE §§ 46–301 to 46–326 (1967).

2. D.C.CODE § 46–309 (1967), so far as is here pertinent, provides that an unemployed individual "shall be eligible" to receive benefits "*only* if it has been *found* by the Board," (emphasis added) that (a) he has made a claim in accordance with Board Regulations, (c) is "physically able to work," and (d) "is available for work," *and* "has registered and inquired for work at the employment office designated by the Board, with such frequency and in such manner as the Board may by regulation prescribe: *Provided,* That failure to comply with this condition may be excused by the Board upon a showing of good cause for such failure * * *."

3. The Board's Regulations authorize such an employer to appeal to the Board, Employers-Regulation IX (1962), and § 46–312(a) of the D.C.Code authorize a further appeal to the District Court and thereafter under § 46–312(b) to this court.

4. § 46–312(a) of the Code provides that in "any appeal under this section the *findings* of the Board, or of the examiner or appeal tribunal, as the case may be, as to the facts, *if supported by evidence* and in the absence of fraud, shall be conclusive * * *." (Emphasis added.)

Likewise as to appeal proceedings before the Board tribunals, a "full and complete record" shall be kept, and the Board's findings must be filed with the court and shall be binding "if supported by evidence." § 46–311(f).

5. In light of his apparent qualifications, Harris, after the filing of his unemployment application, had been classified by the United States Employment Service as (1) a secretary and (2) a bookkeeper.

6. After receipt of Board notification of Harris' pending claim, the appellant offered Harris a job as a salesman at $1.50 per hour. We deem his rejection of that offer as quite irrelevant to the issue of initial eligibility, especially in view of his classification, note 5, *supra,* and compare note 8, *infra,* reference as to grounds for "disqualification."

employment benefits, and as of March 9, 1965, a claims examiner found Harris eligible and a first payment was released that day.

The "last employer" then appealed on the ground that Harris had not been "available" within the meaning of the Act. On March 25, 1965, notice was sent to Harris that a hearing date of April 5, 1965, had been set, but Harris did not appear.[7] The transcript discloses additionally that the Appeals Examiner explained: "He appeared in this office previous to the hearing and indicated he probably would not appear since he did not intend at that time to continue filing on his claim."

Thus the claimant did not take the stand and so was not examined as to his physical ability to work, or concerning what, if any, efforts he might have made to obtain employment as a secretary or bookkeeper or otherwise. The Appeals Examiner noted in his Findings: "The employer contends that claimant is unemployed by choice and, therefore, should not be considered available for benefits." The issue as thus posed involved the basic standard of *eligibility*.[8]

In this context, the Board argues that the District of Columbia Act does not in so many words require that a claimant "be actively seeking work" prior to a determination of eligibility for benefits. On brief we are further told that the Board

"by administrative policy, assures itself periodically during the course of each claim, that claimants are genuinely attached to the labor market and are making adequate contacts for work as the facts, exigencies, and circumstances in each individual case so warrant."

█ It may thus seem clear enough that the Board here recognized, as is true in most states, that to be eligible for benefits, a claimant must be available for work. Further, to be deemed available, a claimant must be "genuinely attached to the labor market" and, all circumstances considered, must be "making adequate contacts for work." The "active search for work" concept is applied at the outset and thereafter as the Board so "assures itself periodically during the course of each claim."

Thus initially a Claims Deputy had made a determination of eligibility for benefits simply upon the applicant's having filed a claim setting forth information as required on the Board's Form DUCB 104, a "Benefit Rights Interview Questionnaire." Even so, as the administrative record shows, Harris had been asked: "Have you made personal contacts in looking for work in the past two weeks?" Harris answered "Yes."

The Claims Deputy having thereupon made his determination accordingly, notice was then given to the claimant and to this appellant as his most recent employer. After the latter appealed, the hearing was required by regulation to be

"conducted in such manner as to ascertain the substantial rights of the parties. All issues presented and relevant shall be considered and passed upon. Where a party appears in person, the member of the appeal tribunal or examiner * * * may examine such party and his witnesses, if any. * * * *"[9]

The same Regulation further provides that if a party fails to appear at the hearing, the appeals officer may continue the hearing to a later time or proceed on the basis of the record then available. Thereupon, as the Act itself clearly provides,

"all decisions shall contain a brief summary of the evidence, the *findings*

---

7. Meanwhile additional benefits payments for certain intervening weeks had been released to Harris.

8. We are only indirectly concerned ˋhere with possible *disqualifications*, such as

are set forth in D.C.Code § 46–310 (1967), and further detailed in Employers-Regulation III, "Disqualifications for Benefits" (1962).

9. Employees-Regulation IV E(1) (1962).

*of fact* and conclusions drawn there-from." [10] (Emphasis added.)

█ Except for ex parte statements attributed to Harris himself, the record discloses no evidence whatever that he had undertaken an active search for work. Otherwise there was no showing that Harris had established a "genuine attachment to the labor market" or that Harris had been "making adequate contacts for work," as the Board's administrative policy contemplated.[11] And, of course, there were, and could be on *this* record, no "findings," supported by evidence, to premise the Appeals Examiner's conclusion of eligibility, despite the clearly and repeatedly stated requirements of the Act.[12]

Rather, the Appeals Examiner in his April 15, 1965, decision noted:

"The record in this case does not disclose any indication that claimant has refused any job offers from the United States Employment Service."

Again, he set out:

"There is no indication in this case that claimant has refused any job referrals."

Such negative assertions may seem lacking in vitality where, for all that appears, what the claimant might least have desired were the "job offers" or "job referrals" mentioned by the Appeals Examiner. What the claimant

might have offered by way of testimony on any such aspects, we can not know.[13]

Under such circumstances we perceive from the Appeals Examiner's Decision that he deemed it controlling that

"[A]n individual's certification *when applying* for benefits will *ordinarily* be accepted as sufficient evidence of his availability." (Emphasis added.)

█ We may assume as stated, that "ordinarily" an applicant's ex parte certificate may permit an *initial* determination of eligibility. But when thereafter the carefully prescribed appeals provisions of the Act are invoked and the claim is put in issue, the legislation beyond doubt establishes that the claimant may receive benefits *"only* if it has been *found* by the Board" (emphasis added) that he is "available for work." [14] And no finding is conclusive unless it be "supported by evidence."

█ We have no doubt that to support a finding that a claimant is "available for work" in the circumstances here discussed, he must adduce evidence that he shall have conducted an active search for work. We are not alone in our view of that basic concept in the determination of availability, and hence of "eligibility" as the term is used in our Code.[15] Moreover, prior decisions of the Board's Appeals Examiners seem to have reflected correctly what we deem to be the appropriate standard. In Appeals Ex-

---

10. *Id.* par. 4.

11. If the Claims Examiner, rather than resting content with the mere "Yes" answer to the relevant question in the Board's interview questionnaire, had pursued the matter more intensively to elicit from the appellant some factual evidence of his purportedly active search, verifiable either by the Board or the employer, the present difficulties might not have arisen.

12. *Supra* notes 2 and 4.

13. As the transcript shows and as the Appeals Examiner found, "Although duly notified claimant did not appear at the hearing."

14. *Supra* note 2.

15. See D.C.CODE § 46–309 (1967), *supra* note 2; AEM, Inc. v. Ecke, 106 U.S.App. D.C. 240, 271 F.2d 506 (1959). See additionally, e. g., Cramer v. Employment Security Commission of Arizona, 90 Ariz. 350, 367 P.2d 956 (1963); Dan River Mills v. Unemployment Compensation Commission, 195 Va. 997, 81 S.E.2d 620 (1954); Dwyer v. Appeals Board, 321 Mich. 178, 32 N.W.2d 434 (1948); Ashford v. Appeals Board, 328 Mich. 428, 43 N.W.2d 918 (1950); Shannon v. Bureau of Unemployment Compensation, 155 Ohio 53, 97 N.E.2d 425 (1951); Jacobs v. Office of Unemployment Compensation, 27 Wash.2d 641, 179 P.2d 707 (1947); In re Dunn, 1 A.D.2d 722, 146 N.Y.S.2d 872 (1955) and In re Postal, 25 A.D.2d 919, 270 N.Y.S.2d 15 (1966).

aminer's Decision No. 16,599 decided February 24, 1965, we note:

"In order to be eligible for unemployment benefits an individual must be available for work. This ordinarily requires *an active search for work* each week for which benefits are claimed together with an ability to accept offers of suitable work within a reasonable time. * * * However, in view of the evidence in this case including claimant's absence of any work search during the three week period involved in this appeal, it must be concluded that she had no meaningful attachment or exposure to the labor market and, therefore, cannot be considered to have been available for work." (Emphasis added.) [16]

The record indicates the nature of the confusion of the approach which here seems to have been followed. The Appeals Examiner's Decision [17] concluded: "The above determination allowing benefits without disqualification is affirmed." But the issue did not involve disqualification. The question turned upon *"eligibility."* We find ourselves far from satisfied that the hearing had been "conducted in such manner as to ascertain the substantial rights of the parties." [18]

Surely substantial rights were involved, of the employer as well as of the non-appearing claimant. The Board would seem to say that when challenged on the issue of eligibility, the claimant may refuse to appear, or decline to submit to examination, and stand simply on his own ex parte certification. Thereupon, the Board would place upon the appellant the burden of showing that the claimant had not refused "job offers" or "job referrals." We reject that construction of the Act.

The judgment of the District Court is reversed with directions that the case be remanded to the Board. The Board is then to reopen its proceedings and set aside its conclusion that the claimant Harris had been shown by evidence to be eligible for benefits in Board Appeal No. 16,748, UI. The Board's action thereupon shall be without prejudice to such further proceedings as to the parties may seem advisable.

Reversed.

---

16. Accord, e. g., App.Exam.Dec.Nos. 14,-178, decided June 28, 1962; 8533, decided October 16, 1956; 6573, decided August 9, 1954; 4127, decided August 23, 1950; 2015, decided November 6, 1946. See Commerce Clearing House Unemployment Compensation Laws Reporter, Vol. 2, State Material.

17. The Board by its resolution of May 18, 1965, affirmed that decision.

18. *Supra* note 9.