NATIONAL GEOGRAPHIC SOCIETY,
Appellant,

v.

DISTRICT UNEMPLOYMENT COMPEN-
SATION BOARD, Lucy Arlene
Thomas.

NATIONAL GEOGRAPHIC SOCIETY,
Appellant,

v.

DISTRICT UNEMPLOYMENT COMPEN-
SATION BOARD, Laura H. Dorsey.

NATIONAL GEOGRAPHIC SOCIETY,
Appellant,

v.

DISTRICT UNEMPLOYMENT COMPEN-
SATION BOARD et al.

Nos. 23078, 23079, 23151–23153.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 18, 1970.

Decided Dec. 8, 1970.

Mr. Arthur B. Hanson, Washington, D. C., with whom Messrs. William J. Butler, Jr., and Ralph N. Albright, Jr., Washington, D. C., were on the brief, for appellant.

Mr. George A. Ross, Washington, D. C., with whom Messrs. F. G. Gordon, Jr., and Russell L. Carter, Washington, D. C., were on the brief, for appellee District Unemployment Compensation Board.

Mr. Edward E. Schwab, Washington, D. C., entered an appearance for appellee, Dorsey, in No. 23079.

Before McGOWAN and TAMM, Circuit Judges, and NICHOLS *, Judge, United States Court of Claims.

* Sitting by designation pursuant to Title 28 U.S.Code, Section 293(a).

TAMM, Circuit Judge:

These consolidated cases represent appeals by the National Geographic Society (hereinafter "National Geographic" or "the Society") from decisions by the District of Columbia Unemployment Compensation Board (hereinafter "the Board") granting five of the Society's former employees unemployment compensation benefits.

On September 20, 1968 the Society moved a large portion of its District of Columbia operations from Third and R Streets, N.W. to a new location approximately five miles west of Rockville, Maryland and approximately 19 miles from downtown Washington. To aid employees residing in the District in reaching their new place of employment, the Society chartered several D.C. Transit buses to operate on certain routes within the District. Employees who availed themselves of the chartered bus service were charged $12.50 per month.

The five individuals involved here worked at the Society's Third and R Street location but refused to transfer to Maryland for reasons relating to the increased distance and time involved in reaching work. After resigning their jobs, they filed claims for unemployment compensation benefits with the Board pursuant to the District of Columbia Unemployment Compensation Act. In each case an initial determination was made that the claimant had established good cause for leaving his employment with the Society and was otherwise eligible for unemployment compensation. The Society appealed these rulings to Appeals Examiners who, after hearing testimony and oral argument, affirmed the initial determinations, setting forth the bases for their decisions in written opinions. National Geographic then appealed to the full Board, which issued short resolutions upholding the Examiners' decisions.

Having exhausted its administrative remedies, the Society appealed the Board's decisions to the United States District Court for the District of Columbia. In each case the District Court granted the Board's motion for summary judgment. It is from these decisions that these appeals are taken.

After careful consideration of the issues presented, we hold that the District Court erred in upholding the Board's decisions.

I.

The District of Columbia Unemployment Compensation Act and regulations adopted pursuant to that Act establish the guidelines for determining whether these claimants are eligible for benefits and also establish the procedures to be followed in determining eligibility.

Section 10(a) of the Act provides:

An individual who has left his most recent work voluntarily without good cause, as determined by the Board under regulations prescribed by it, shall not be eligible for benefits [for a period of at least four weeks].

D.C.Code § 46–310(a) (1967). Pursuant to this legislative mandate, the Board adopted Employees-Regulation III A (1962), which defines "good cause" to be "what * * * the reasonable and prudent individual in the labor market [would] do in like circumstances." According to this regulation, the claimant has the burden of proving "good cause."

Another section of the D.C. Unemployment Compensation Act states that an individual otherwise eligible for benefits is disqualified for a certain period if he "fails, without good cause as determined by the Board under regulations prescribed by it, * * * to accept any suitable work when offered to him * * *." D.C.Code § 46–310(c) (1967). Since in this context leaving work and refusing to accept new work are essentially two sides of the same coin, we feel the Board's regulation defining "good cause" as this term is used in section 10(c) would also be helpful in determining what is "good cause" for leaving employment under section 10(a). This regulation, Employees-Regulation III C (1962), lists a number of factors which

ordinarily would not constitute "good cause" for refusing to accept employment; one of these is a "[d]ifference in locality where transportation facilities are adequate and economical."

On appeal from an initial determination of eligibility under these statutes and regulations, the Appeals Examiner is to conduct a hearing (D.C.Code § 46–311(e) (1967)) and is to set forth in his decision "a brief summary of the evidence, the findings of fact and the conclusions drawn therefrom." Employees-Regulation IV E(4) (1962). If an appeal is taken to the Board as a whole, it is to consider the Examiner's decision and the record below in deciding whether to affirm or reverse.[1] Judicial review of the Board's decisions is authorized by section 12 of the Act. D.C.Code § 46–312 (1967).

## II.

Having examined the relevant statutes and regulations, we move to a consideration of the individual cases. In reviewing the Board's decisions in these cases, we are forced to rely upon the findings and reasons given in the Appeals Examiners' opinions for the Board did not state why it affirmed their decisions. We assume that the Board incorporated by implication the grounds given in the Examiners' opinions, but we will have more to say about this assumption at the close of our opinion.

We consider first the case of Mrs. Thomas. Unlike the other claimants, Mrs. Thomas resigned from National Geographic long before the move took place, doing so because she was ill. When she recovered from her illness, National Geographic offered to re-employ her, but she refused to accept their offer because of the move the Society was contemplating. Thus the issue in her case was whether she had refused to accept an offer of suitable employment.

At the hearing before the Appeals Examiner the Society's senior personnel assistant testified that one of the chartered buses could pick Mrs. Thomas up approximately three blocks from her home at 7:03 a. m. (J.A. 25.) According to this personnel officer, she would arrive at the Society's new location at 7:45, fifteen minutes before she was due for work. (Id.) In her testimony Mrs. Thomas said that she would have to ride a city bus to the Society's pickup point (J.A. 24), but when she made this statement she was apparently mistaken as to the location of the nearest pickup point, thinking it was farther away than it actually was.[2]

In his written opinion the Appeals Examiner "concluded from the evidence that the work which was offered to claimant by her former employer was not suitable because of the distance to and from work." (J.A. 2.) He noted that the Society offered "bus service which could pick claimant up several blocks from her

1. Employees-Regulation IV C(3) (1962). The Board may also hear testimony (Id.), and the appellant here contends that in some of these cases the Board violated its regulations and the Unemployment Compensation Act by hearing testimony not given under oath and by failing to keep a record of this testimony. (Brief for Appellant at 40–41.) Because of the disposition we make of the cases, it is unnecessary for us to resolve these issues.

2. When National Geographic's personnel assistant spoke to Mrs. Thomas about the Society's offer of employment, he did not know that one of the chartered buses would stop within three blocks of Mrs. Thomas' home and therefore could not notify her of this fact. (Transcript of Hearing before D.C. Unemployment Compensation Board Appeals Examiner in the Case of Lucy A. Thomas 5–6). We need not consider the effect, if any, of the Society's apparent failure to tell Mrs. Thomas where the bus stop nearest her home was located because the Appeals Examiner did not give this as a basis for his decision and we cannot uphold his decision on grounds other than those on which he relied. Berko v. SEC, 297 F.2d 116 (2d Cir. 1961). Similar questions of notification were raised in some of the other cases but, as in the case of Mrs. Thomas, they were not mentioned in the Examiners' opinions.

house" (*Id.*), but did not discuss this service any further.

■ We find the Examiner's discussion defective in that he made no finding as to the adequacy of the transportation available to Mrs. Thomas, but appeared to base his conclusion solely upon the distance involved. Distance is at best a rough indicia of the inconvenience and hardship which a traveler suffers, and the Board recognized this in formulating its regulations. Regulation III C indicates that a change in location is not in itself "good cause" for an employee to refuse to accept a job; he must also show that the transportation facilities between his house and the job site are not "adequate and economical." Of course, the distance between a person's home and a proposed place of employment may be so great that his refusal to accept the employment could be held justifiable without consideration of the available transportation. However, we do not feel 19 miles is such a distance. In this regard we note that in the other cases involving National Geographic's move to Rockville the Appeals Examiners felt compelled to consider at least to some extent the question of the adequacy of the Society's transportation. We note further that unemployment compensation boards and courts in other jurisdictions have held that a person was unjustified in refusing to accept work 15 to 20 miles from his home, indicating that this distance is certainly not prima facie unreasonable. Tunget v. State Employment Security Dept., 2 Wash.App. 574, 468 P.2d 734 (1970); Sciacca v. Unemployment Compensation Bd. of Review, 189 Pa.Super. 334, 150 A.2d 557 (1959); Szojka v. Unemployment Compensation Bd. of Review, 187 Pa.Super. 643, 146 A.2d 81 (1959). Thus, we feel the Appeals Examiner was required to make a finding as to the adequacy of the transportation available to Mrs. Thomas.

■ Findings of fact are not mere procedural niceties; they are essential to the effective review of administrative decisions. As we stated in Saginaw Broadcasting Co. v. FCC, 68 App.D.C.

282, 287, 96 F.2d 554, 559, cert. denied, Gross v. Saginaw Broadcasting Co., 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938):

> When a decision is accompanied by findings of fact, the reviewing court can decide whether the decision reached by the court or commission follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have any substantial support in the evidence. In the absence of findings of fact the reviewing tribunal can determine neither of these things. The requirement of findings is thus far from a technicality.

Another reason for requiring findings in administrative decisions is to prevent careless and arbitrary actions. *Id.*; 2 K. Davis, Administrative Law Treatise § 16.05, at 446–448 (1958). An agency is much more likely to use care in exercising its discretion if it is obligated to set forth in writing the factual basis for its decision. 2 K. Davis, *supra* at 447. Such a requirement protects not only the parties to the action, it also protects others with similar interests by establishing guidelines to which the agency can be expected to adhere, and may be required to adhere, in subsequent decisions.

These reasons for requiring findings are particularly compelling in this case. There are undoubtedly other employers in the District who are or will be considering moving their operations to the suburbs, and these employers need to know the circumstances in which their employees will have "good cause" to resign their jobs under the D.C. Unemployment Compensation Act. Cases from other jurisdictions indicate that an employee normally is not justified in resigning his employment if he can reach his place of employment in an hour or less. Fischl v. Catherwood, 28 A.D.2d 1021, 283 N.Y. S.2d 771 (1967); In re Kapilian's Claim, 15 A.D.2d 689, 223 N.Y.S.2d 453 (1962); Szojka v. Unemployment Compensation Bd. of Review, *supra*. There is even a decision by one of the Board's Appeals Examiners in another case involving Na-

tional Geographic which seems to support this proposition. (J.A. 9.) Yet in this, the first case in which the Board as a whole has attempted to define "good cause" in this context, it has apparently gone counter to these decisions. In these circumstances, rather than mentioning the crucial factor of transportation only in passing, the Board must take great care in setting forth its findings as to the adequacy of the Society's transportation so that we can properly review its decision and so that the decision, if affirmed, will provide guidelines for other employers and employees. We remand for this purpose.

### III.

■ With regard to claimant Pyatt, there was testimony at the hearing indicating that she could board one of the Society's buses 2½ blocks from her home at 6:54 a. m. and reach its new location in 51 minutes. (Transcript of Hearings before D.C. Unemployment Compensation Board Appeals Examiner in the Case of Dorothy H. Pyatt 9, 13–14 (hereinafter "Pyatt Hearing"[3]).) The Society claimed that Mrs. Pyatt could walk the 2½ blocks, but she said she preferred to ride a city bus because it was dangerous to be walking in her neighborhood at that hour of the morning. (J.A. 37.) Thus, she felt she would have to pay for both a city bus and the Society's bus. There were three city bus lines which could have provided the necessary transportation (Pyatt Hearing at 10–11), the buses stopping one block from Mrs. Pyatt's home. (Pyatt Hearing at 24.)

In his opinion the Appeals Examiner gave a partial summary of the testimony given by both parties. Then, without making specific findings on the issues in contention, he concluded that "the claimant would have suffered a hardship both in terms of a monetary loss (added transportation cost) and time-wise had she accepted the transfer to her employer's location in Maryland." (J.A. 7.)

We cannot affirm the Appeals Examiner's decision because we are not sure what findings of fact and conclusions of law it is based upon. Counsel for the Board apparently believes that the Appeals Examiner found that Mrs. Pyatt was justified in wanting to ride a city bus to the Society's chartered bus stop and that his decision was based in part on his finding. (See Brief for Appellee at 6.) The Examiner stated that Mrs. Pyatt would suffer a monetary loss if she worked at the new location because of "added transportation cost," and the Board's counsel must infer from this statement that the Examiner concluded that Mrs. Pyatt would have to pay for both city transportation and the Society's transportation. However, since the Society's transportation cost six cents more per day than the city transportation which Mrs. Pyatt utilized in reaching her old place of employment, he may simply have been saying that she would have "added transportation cost" no matter how she traveled to the Society's bus stop. This interpretation is quite plausible because at the close of the hearing the Examiner asked the Society's representative to verify that this six cent differential would exist even if Mrs. Pyatt did not use city transportation in commuting to National Geographic's Maryland location. (Pyatt Hearing at 24.) Another indication that the Appeals Examiner did not find that Mrs. Pyatt was justified in taking a city bus to the Society's pickup point is that he gave no reasons, explicitly or implicitly, which would support such a finding; in summarizing Mrs. Pyatt's testimony, he even omitted the reason she gave for wanting to take a bus, i. e., that she felt it was dangerous to walk in her neighborhood early in the morning.

The Examiner's failure to give reasons in support of the alleged finding is in itself a serious omission. Without these reasons, it is difficult for us to under-

---

3. For convenience' sake this citation form will also be used in referring to the hearings before the Appeals Examiners in the other cases.

stand exactly why the finding was made, assuming for the moment that it was. *See* 2 K. Davis, *supra* at § 16.12. At one point during the hearing the Examiner did indicate that he thought Mrs. Pyatt's desire to take a bus in the morning might be reasonable because 2½ blocks was perhaps too great a distance for her to walk. (Pyatt Hearing at 24.) However, the Society's representatives immediately took exception to this statement, and the Examiner did not say conclusively that either this rationale or the alleged danger involved in walking in Mrs. Pyatt's neighborhood early in the morning justified the claimant's preference for riding to the chartered bus stop. Moreover, any reliance by the Examiner on the premise that 2½ blocks was too far for the claimant to walk would be of very questionable validity. Mrs. Pyatt did not give this as a reason why she preferred riding a city bus to the Society's pickup point, and in determining whether her preference was reasonable the Board should confine itself to the considerations on which the preference was based.

Thus, we are left to speculate not only as to whether the Appeals Examiner made the finding which the Board now alleges he made, but also as to the reasons which might have motivated him to make the alleged finding. Obviously we cannot engage in such speculation. As Justice Cardozo said in a similar case:

> In the end we are left to spell out, to argue, to choose between conflicting inferences. Something more precise is required in the * * * findings of an administrative agency. * * * We must know what a decision means before the duty becomes ours to say whether it is right or wrong.

United States v. Chicago, M., St. P. & P. R. R., 294 U.S. 499, 510–511, 55 S.Ct. 462, 467, 79 L.Ed. 1023 (1935) (Citations omitted.)

Nor can we affirm the Board on the ground that the legal conclusion which it reached is clearly mandated under any possible interpretation of its opinion. For reasons we discussed earlier in connection with Mrs. Thomas' claim for benefits, we cannot say that a bus trip of fifty-one minutes at a cost of thirty cents is clearly inadequate and uneconomical transportation under the Board's regulations.[4] In fact, there would be a serious question as to the adequacy of the transportation even if the Board had made a valid finding that Mrs. Pyatt needed to use city transportation in commuting to the Society's Maryland location. There is no finding as to how long it would take Mrs. Pyatt to reach the pickup point for the Society's buses if she took a city bus, but there were three city bus lines which could provide the necessary transportation and it is possible that her travel time would be the same as if she walked the entire distance. With regard to the increased cost of taking a city bus, there was no indication that the streets in Mrs. Pyatt's neighborhood were dangerous when she returned from work and that she desired to take a bus then. It therefore appears that her transportation cost per day would have been approximately ninety cents and this sum is not clearly unreasonable.

Thus, the legal questions presented are not frivolous and the Examiner's opinion is confusing. In these circumstances we must remand for a clarification of the Examiner's decision so that we can perform our proper function of applying the law to the facts as found by the Board.

**IV.**

■ In two cases, those involving Mrs. Smith and Mrs. Giles, the primary factual issue raised below was the claimant's alleged inability to obtain adequate babysitting care for her children. In each opinion the Examiner merely sum-

---

4. The Appeals Examiner obviously is not bound to accept the Society's estimate that Mrs. Pyatt's travel time would be fifty-one minutes. However, if he does not accept this estimate, he should say so and should give his reasons for rejecting it.

[redacted]

marized portions of the testimony given at the hearing and then concluded that the claimant had established "good cause" for leaving her employment.

We find the decision as to Mrs. Smith defective in two respects. First, as in the case of Mrs. Pyatt, it is not clear from the Examiner's opinion what the basis for his decision was. In summarizing the testimony the Examiner referred to statements by Mrs. Smith which indicated that she would have incurred additional transportation time and expense in commuting to the Society's new location and that she would have been without babysitting care from the time she left for work until 7:30 a. m.[5] He did not, however, make specific findings of fact and base his decision upon those findings as required by the Board's regulations. Employees-Regulation IV E (4) (1962). We noted in an earlier case:

> The decisions require a commission in a quasi-judicial proceeding to make basic findings supported by evidence and ultimate findings which flow rationally from the basic findings * *.

Capital Transit Co. v. Public Utilities Comm'n., 93 U.S.App.D.C. 194, 205, 213 F.2d 176, 187, cert. denied 348 U.S. 816, 75 S.Ct. 25, 99 L.Ed. 643 (1954). *See also* Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 398, 428 F.2d 1093, 1100 (1970). Here we have only the ultimate finding that Smith had established "good cause" for leaving her employment, and we therefore must remand for a statement of the basic findings from which this conclusion is derived.

The Examiner also erred to the extent that he did base his decision upon the ground that Mrs. Smith would not have had child care prior to 7:30 if she had transferred to the new location. This is so because there is absolutely no evidence in the record that Mrs. Smith attempted to obtain a babysitter for this period. She testified that a sister living with her who could have cared for her children throughout the day had moved away (J.A. 32–33), but she did not testify that she had sought someone else to provide babysitting care early in the morning.[6] Without evidence on this point we could not sustain the Board's decision even if it were based solely upon an explicit finding that Mrs. Smith did not have adequate babysitting care.

[redacted] In the case of Mrs. Giles we must again remand because of the Appeals Examiner's failure to specify the basis for his decision. It seems the Examiner relied primarily on the claimant's testimony that she was unable to obtain babysitting care, but he made no findings on the babysitting issue and his brief summary of the testimony cannot substitute for such findings. *See* Delaware, L. & W. R. R. v. City of Hoboken, 10 N.J. 418, 427, 91 A.2d 739, 743 (1952). This is particularly true in view of the fact that the testimony as to whether Mrs. Giles made a good faith attempt to find someone to look after her children was both extensive and somewhat confusing. Here, in addition to the findings themselves, adequate explanations of the findings are required; both should be supplied on remand.

## V.

With regard to Mrs. Dorsey, we feel it is necessary to consider only the Appeals Examiner's finding that Mrs. Giles was conducting an active work search and was thus "available for work" as required under section 9 of the Unemployment Compensation Act.[7] The Ex-

5. (J.A. 5.) At the hearing Mrs. Smith testified that she had engaged a babysitter to care for her children after 7:30. (J.A. 33.)

6. As we pointed out in Woodward & Lothrop, Inc. v. District of Columbia Unemployment Compensation Bd., 129 U.S. App.D.C. 155, 158, 392 F.2d 479, 482 n. 11 (1968), defects such as this would ordinarily be eliminated if the Examiner questioned the claimant more intensively.

7. The fact that Mrs. Dorsey had registered with the U. S. Employment Service (Dorsey Hearing at 16) is not enough to establish her eligibility; section 9 of the Unemployment Compensation Act re-

[redacted]

aminer gave no explanation of this finding and in the circumstances of this case we feel he was required to do so.

■ To be considered "available for work" an individual must actively seek employment (Woodward & Lothrop, Inc. v. District of Columbia Unemployment Compensation Bd., 129 U.S.App. D.C. 155, 392 F.2d 479 (1968)), and he must not unreasonably restrict his job search. *See generally* 25 A.L.R.2d 1077 (1952). We feel there is a substantial question presented here as to whether Mrs. Dorsey so restricted her search. There is an Appeals Examiner's decision in this jurisdiction holding that an individual was making an active job search even though he concentrated his efforts on one employer, making only a few approaches to others. App.Ex.Dec.No. 8533, 2 CCH Unempl.Ins.Rep. ¶ 8104 (October 16, 1956). In that case, however, the Examiner explained that there were only a few jobs for which the claimant was qualified, that he made very strenuous efforts to obtain the job he sought, and that his chances of obtaining the job were very good. (*Id.* at 12,508). The Examiner concluded that the claimant had "placed no restrictions on his availability" (*Id.*), thereby implying that the restrictions were inherent in the market. Here there is no indication that any of the factors relied upon in the earlier case were present.[8] We do not mean to suggest that the Board must apply the same test in both cases. We do feel, however, that it is incumbent upon the board to set forth some explanation as to why they found her limited job search sufficient to constitute an active search for work, and we remand so that they may do so.

## VI.

■ In closing we reconsider the Board's failure to state whether it adopted the Appeals Examiners' opinions as its own. We believe this failure adds unnecessarily to the confusion in these cases; considering the complicated testimony given at some of the hearings, it is possible that the Board based one or more of these decisions on grounds other than those which motivated the Appeals Examiners. In a recent opinion of the District of Columbia Court of Appeals, the court recommended that the Board state specifically whether it has adopted the Examiner's decision.[9] We agree completely with this recommendation and call it to the Board's attention.

Reversed and remanded for proceedings consistent with this opinion.

---

quires that claimants be registered for work at an employment office *and* available for work. D.C.Code § 46–309 (1967).

8. There is an indication that at least one was not present. At the hearing the Society's representative suggested that at the time in question government agencies were particularly poor places for Mrs. Dorsey to be seeking employment. (Dorsey Hearing at 16.)

9. Woodridge Nursery School v. Jessup, 269 A.2d 199 at 202 n. 16 (D.C.App.1970) In Jessup the court was applying the District of Columbia Administrative Procedure Act, D.C.Code § 1–1501 *et seq.* (1970 Supp.), which supersedes portions of the Unemployment Compensation Act. Their recommendation would have been just as valid if the Unemployment Compensation Act had been applicable in its entirety.