**GENERAL RAILWAY SIGNAL COMPANY, Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COMPENSATION BOARD, Respondent.**

No. 9697.

District of Columbia Court of Appeals.

Argued Jan. 22, 1976.

Decided March 25, 1976.

Rehearing en Banc Denied May 21, 1976.

---

9. *See Cross v. United States*, 122 U.S.App.D.C. 380, 382, 354 F.2d 512, 514 (1965), *aff'd after remand*, 128 U.S.App.D.C. 416, 389 F.2d 957 (1968).

John J. Pajak, Washington, D. C., with whom Peter C. Nelson, Rochester, N. Y., was on the brief, for petitioner.

Robert J. Hallock, with whom George A. Ross, Bill L. Smith, Washington, D. C., and John L. Davis, Washington, D. C., were on the brief, for respondent.

John P. Sizemore, Washington, D. C., submitted a brief in behalf of the Alliance for Labor and Community Action as amicus curiae.

Before REILLY, Chief Judge, and YEAGLEY and MACK, Associate Judges.

REILLY, Chief Judge:

This is a petition by an employer challenging the right of the District Unemployment Compensation Board to reverse a decision by an appeals examiner adverse to a claimant, where such claimant did not appear at the hearing before the examiner or present testimony rebutting evidence that claimant was making no real effort to obtain employment. According to petitioner, the final determination of the Board flies in the face of *Woodward & Lothrop, Inc. v. District of Columbia Unemployment Compensation Board,* 129 U.S.App.D.C. 155, 392 F.2d 479 (1968), as well as provisions of the District of Columbia Administrative Procedure Act, D.C.Code 1973, §§ 1–1501, –1509, which this court has repeatedly reminded the Board are applicable to its proceedings.[1]

1. *Wallace v. District Unemployment Compensation Bd.,* D.C.App., 289 A.2d 885 (1972); *Hill v. District of Columbia Unemployment Comp. Bd.,* D.C.App., 279 A.2d 501 (1971); and *Woodridge Nursery School v. Jessup,* D.C.App., 269 A.2d 199 (1970).

The record shows that claimant, a married woman employed by petitioner as a secretary, voluntarily quit her job on March 15, 1974. She was pregnant at the time but made no request for maternity leave. On July 18th of that year—less than six weeks after childbirth—she filed a claim for unemployment benefits. The claims deputy found claimant disqualified for the week ending July 20, 1974, because childbirth had occurred so recently, but found her eligible for benefits beginning with the week ending July 28, 1974. The employer promptly appealed. Instead of scheduling an expeditous hearing on the appeal, the agency continued to make weekly payments. Beginning November 8, 1974, claimant filed standard "DUCB Form 16" with the agency and continued to fill out another form, entitled "Certificate of Eligibility". After receiving two further letters of protest from the employer, a hearing was finally held on March 7, 1975. Claimant did not appear.

Petitioner's employment manager testified that the claimant was regarded as a competent secretary and that if she had applied for a job she would have been reemployed had a vacancy existed. He said such a job opening did occur on August 23, 1974, when her replacement quit, but that claimant had never been in touch with the company since her own resignation the previous March. He also testified that at that time, she told her superior that she intended not to work for approximately a year.

The appeals examiner issued a decision holding claimant ineligible for unemployment benefits retroactive to July 28, 1974. He observed that claimant must establish eligibility at a hearing—which claimant failed to do, despite being given due notice. The examiner found that "on the basis of all the evidence . . . claimant has not established her eligibility for benefits." He also noted that "apart from employer's evidence it seems anomalous that a capable secretary in the metropolitan area should have been unable to find suitable work . . . . if she had a genuine attachment to the labor market and was making an active work search each week."

Claimant appealed to the Board, which, on June 28, 1975, overruled its examiner and found claimant eligible for benefits through March 7, 1975. The Board concluded that claimant had conducted an active search for work as required by law. In its memorandum opinion, the Board disagreed with the findings of the examiner, characterizing the testimony on which he relied as "hearsay" and reaching a contrary result on the basis of biweekly filings by the claimant of certain forms and certificates of eligibility. According to the Board, these documents established sufficient evidence of eligibility.

■■■ As decisions of this court have made abundantly clear,[2] a decision of the Board cannot be affirmed on judicial review unless the "findings of fact and conclusions of law [are] supported by and in accordance with the reliable, probative, and substantial evidence." D.C.Code 1973, § 1–1509(e). The text of the challenged opinion would seem to indicate that the Board has a somewhat novel notion of what constitutes evidence. In ruling out as hearsay the sworn testimony given by the employer at the hearing as grounds of support for the appeals examiner's conclusion, the Board apparently misunderstood the distinction between probative and competent evidence. Hearsay evidence, if it has probative value, is admissible at an administrative hearing and may even be received in a court of law if no objection is raised.[3] Moreover, even though one portion of the disregarded testimony was hear-

---

2. *See* cases cited note 1 *supra.* The force of these decisions was reaffirmed by a 1974 Congressional amendment. D.C.Code 1973, Supp. II, § 46–312.

3. Only "irrelevant, immaterial and unduly repetitious evidence" is excludable in an agency proceeding. D.C.Code 1973, § 1–1509.

**532** ▬ ▬▬▬▬▬▬▬▬▬

say—the conversation between the claimant and her superior—the main thrust of the testimony of the witness was that the claimant had never reapplied for work at the most logical place for any jobseeker to go—*viz.,* the office of the former employer. This testimony was obviously based not on hearsay but company records and, if accepted as true,[4] would seem to upset the premise that the claimant was making a bona fide effort to obtain employment.

▬▬ Instead, the Board, without scheduling or hearing oral argument,[5] deemed controlling a series of unsworn, self-serving statements made by the claimant, not at the hearing, but filed in writing prior to receiving notice of the hearing, with the agent of the Board to whom she applied for her regular weekly payments. These are what counsel for the Board terms the "substantial evidence" upon which it rested its decision. Plainly, such documents were not "evidence" at all within the contemplation of the D.C. APA, which accords every party to an agency hearing a right "to conduct such cross-examination as may be required for a full and true disclosure of the facts."[6] It is well settled that unless the persons who supply the answers to questionnaires are available for cross-examination by the adverse party, such documents do not meet the requirements of "reliable, probative, and substantial evidence" in a proceeding where impeaching evidence has been introduced. *See Wirtz v. Baldor Electric Company,* 119 U.S.App. D.C. 122, 337 F.2d 518 (1964).

Some years ago, the Board's failure to enforce strictly the eligibility provisions of the Unemployment Compensation Act[7] re-

sulted in a judicial decision holding that if a claimant failed to appear at a hearing on an employer's appeal, a Board order finding the claimant "available for work" must be reversed as unsupported by evidence. The court said:[8]

Surely substantial rights were involved, of the employer as well as of the non-appearing claimant. The Board would seem to say that when challenged on the issue of eligibility, the claimant may refuse to appear, or decline to submit to examination, and stand simply on his own ex parte certification. Thereupon, the Board would place upon the appellant the burden of showing that the claimant had not refused "job offers" or "job referrals." We reject that construction of the Act.

In oral argument, we were informed by counsel that after this opinion was handed down the Board developed what is referred to as "DUCB Form 16", which requires claimants professing to be searching for work to submit as a precondition for payments. To fill out this form completely, a claimant must list the date, the names and addresses of employers "contacted", the name and title of the person talked to, and the results of his application. In the case before us, the claimant had filled out—or partially filled out—the forms for several months which the Board found (in disagreement with its hearing examiner) amounted to conclusive evidence of a work search which satisfied the eligibility requirements of the statute.

Upon receiving a signed form biweekly from the claimant, which gave the names of three or four prospective employers claim-

4. This assertion was obviously true, as claimant in filling out the eligibility questionnaire (DUCB 104) stated that she was taking no action to be reinstated (Exhibit 8). Despite the Board's own reliance on documents, the agency attached no importance to this admission.

5. The Board seemingly disregarded *Carey v. District Unemployment Compensation Bd.,* D.C.App., 304 A.2d 18 (1973).

6. D.C.Code 1973, § 1–1509(b).

7. Now D.C.Code 1973, § 46–309.

8. *Woodward & Lathrop, Inc. v. District of Columbia Unemployment Compensation Board, supra,* at 159, 392 F.2d at 483.

ant had supposedly "contacted" during the preceding fortnight, the claims deputy, without attempting to verify this information, in each instance authorized payment of benefits. On numerous occasions, such payments were made even though the information was unverifiable as the claimant had failed to give the name of the person with whom she talked or the particular address of a company doing business at several locations. Other forms disclosed that claimant had frequently refused jobs because the salary was "too low" without a description of what the proffered pay was. Yet benefits were not denied, despite the fact that such information on the forms raised a serious question of continued eligibility under D.C.Code 1973, § 46–310(d)(1)(B), and D.C.Reg. § 18–301(3)(b). Any official of the agency treating such incomplete forms as establishing eligibility was scarcely mindful of his fiduciary obligation to the taxpayers contributing to the unemployment trust fund.

According to counsel, however, the Board was authorized to credit these assertions of the claimant even though she did not appear at the hearing on the theory that such action was authorized by a dictum in the *Woodward & Lothrop, supra,* opinion itself. Counsel points to a footnote [9] which remarked that if the claims examiner (now called "claims deputy") had sought " . . . to elicit from the appellant some factual evidence of his purportedly active search, verifiable either by the Board or the employer, the present difficulties might not have arisen."

It seems obvious that what the court was suggesting in this footnote was not the kind of evidence to be adduced at an appeals hearing, but the kind of steps to be taken at the first level of an eligibility determination to avoid improvident payments calculated to give rise to formal appeals. But whatever the court meant by this observation, the Board itself should have recognized that the *Woodward & Lothrop* court was not dealing with the D.C. APA, which had not as yet become effective, and that under the procedural requirements of § 1–1509 of that statute it was not within its province in a contested case to rest its findings upon something other than "reliable, probative, and substantial evidence." *Woodridge Nursery School v. Jessup,* D.C. App., 269 A.2d 199 (1970).

Accordingly, the order of the Board is set aside, and the case remanded to the Board for further proceedings and findings, including possible consideration of appropriate action under D.C.Code 1973, § 46–319 (d).

*Reversed and Remanded.*

9. *Id.* at 158 n. 11, 392 F.2d at 482.