Theodor F. **VON STAUFFENBERG,**
Appellant,

v.

**DISTRICT UNEMPLOYMENT COMPEN-
SATION BOARD,** Appellee.

No. 24695.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 9, 1971.

Decided Jan. 28, 1972.

Miss Alison Grey, Washington, D. C., with whom Mr. Bingham B. Leverich, Washington, D. C., was on the brief, for appellant.

Mr. George A. Ross, Washington, D. C., with whom Messrs. F. G. Gordon, Jr. and Russell L. Carter, Washington, D. C., were on the brief, for appellee.

Before WRIGHT and WILKEY, Circuit Judges, and CHRISTENSEN,* Senior United States District Judge for the District of Utah.

PER CURIAM:

■■ Theodor F. Von Stauffenberg, our appellant, was last employed as a salesman and then store manager for the Salvation Army Men's Social Center[1] from November 18, 1966 through November 19, 1969. Finding himself suddenly unemployed, appellant on December 3, 1969 filed a claim for unemployment benefits with the District Unemployment Compensation Board. His claim was subsequently denied on the ground that his most recent employer was a religious and charitable organization exempt from unemployment taxes and that, as a result, he was ineligible[2] for benefits under the District of Columbia Unemployment Compensation Act.[3]

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. The employer, whose parent organization is the Salvation Army, operates stores which sell merchandise at a profit to fund the provision of food, shelter and rehabilitation programs for indigents and others in need of help.

2. Appellant's claim was denied initially by the claim deputy on December 11, 1969 on the ground that there was no record of covered employment during the base period. Appellant then filed an appeal on December 15, 1969. A hearing was held by an appeals examiner on February 5, 1970, and the decision was affirmed by the Board on February 10, 1970.

3. 46 D.C.Code § 301 et seq. (1967).

The Board's decision was affirmed by the District of Columbia Court of Appeals on September 25, 1970,[4] and appellant renews his claim here. In essence, appellant contends that certain sections of the Act, as applied to deny his claim for unemployment benefits, deprive him of equal protection of the laws in violation of the due process clause of the Fifth Amendment.[5] For reasons given below, we are unpersuaded by this argument and accordingly affirm.

Subsection 7(c) of the District of Columbia Unemployment Compensation Act, 46 D.C.Code § 307(c), provides in relevant part: "To qualify for benefits an individual must have * * * been paid wages *for employment* * *. * of his last base period." (Emphasis added.) Subsection 1(b) (1) of the Act, 46 D.C.Code § 301(b) (1), defines "employment" as "any service * * * performed for wages or under any contract of hire, written or oral, express or implied," but subsection 1(b) (5) excludes from the term "employment" certain types of service, including, under subsection 1(b) (5) (G), 46 D.C.Code § 301 (b) (5) (G):

> "[S]ervice performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious or charitable purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual[.]"

Finally, subsection 1(a) of the Act, 46 D.C.Code § 301(a), provides: "The term 'employer' means every individual and type of organization for whom services are performed *in employment*." (Emphasis added.)

The effect of these provisions is twofold. First, organizations of the type described in subsection 1(b) (5) (G) are not deemed to be "employers" within the meaning of the Act and are therefore exempted from paying the unemployment compensation tax.[6] And second, the employees of such exempt organizations are not deemed to have been "paid wages for *employment*," thereby rendering them ineligible to receive benefits.

Appellant does not challenge the right of Congress to exempt religious and charitable organizations from payment of the tax. Despite this concession, however, appellant contends that, since many employees of both exempt and nonexempt employers are similarly situated with respect to the type of work which they perform and their vulnerability to the risk of unemployment, Congress cannot constitutionally grant employment benefits to one class of employees without granting them to both.

When a legislature chooses to inaugurate a reform as sweeping as unemployment compensation, it is often compelled to make compromises which, whether in the name of politics or economy, are often difficult to explain in strictly legal terms. *See, e. g.,* Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 57 L.Ed. 730 (1913); Romero v. Hodgson, N.D. Cal., 319 F.Supp. 1201, 1203 (1970), affirmed, 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678 (1971). As a result, the judiciary has expressed a reluctance to inquire too deeply into the policy considerations underlying such legislation, and the role of equal protection in the area of economics and social welfare has traditionally been limited. *See, e. g.,* Rich-

---

4. Von Stauffenberg v. District Unemployment Compensation Board, D.C.C.A., 269 A.2d 110 (1970).

5. Although the equal protection clause of the Fourteenth Amendment applies only to the states, the due process clause of the Fifth Amendment, which is applicable to the District of Columbia, forbids discrim-

ination which denies equal protection of the laws. *See, e. g.,* Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

6. An exempt organization may, however, elect to be covered by the Act. 46 D.C. Code § 301(b) (8).

ardson v. Belcher, 404 U.S. 78, 81, 92 S. Ct. 254, 30 L.Ed.2d 231 (1971); Dandridge v. Williams, *supra*, 397 U.S. at 485, 90 S.Ct. 1153.

■■ If the challenged classification rests upon some "reasonable" basis, it does not offend the Constitution merely because it "is not made with mathematical nicety, or because in practice it results in some inequality." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). Indeed, it is well settled that "[a] statutory [classification] will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). *See, e. g.,* Schilb v. Kuebel, 404 U.S. 357, 364, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971); Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1438 (1960); Kotch v. Board of River Port Pilot Com'rs, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070 (1935). And in applying this standard, the Supreme Court has consistently upheld the constitutionality of classifications substantially similar to that which is here under attack.[7] *See, e. g.,* Richardson v. Belcher, *supra*; United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947); Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937); Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937); Romero v. Hodgson, *supra*.

■ The primary goal of the District of Columbia Unemployment Compensation Act "is to protect employees against economic dependency caused by temporary unemployment and to reduce the necessity of relief or other welfare programs."[8] Underlying this long-range objective, however, is the notion that it should be the responsibility of employers to compensate their employees when they become unemployed through no fault of their own. As a result, Congress has seen fit in fashioning the Act to utilize a "special" rather than a "general" funding approach. Unlike most social welfare schemes,[9] the Unemployment Trust Fund derives its revenues exclusively from a special tax levied on employers, rather than from general government sources or direct employee contributions.

In essence, the fund may be likened to a bank owned and operated by government. The employer is required to maintain a specified minimum balance in his "account," from which his employees may draw benefits in times of need. The employer must periodically replenish his account, and these periodic deposits are based upon the employer's past benefit experience. 46 D.C.Code § 303(c). Thus, since employee benefits under the plan are inextricably linked to employer payments, there is simply no fund from which employees of exempt organizations can obtain benefits.

■ Moreover, while it is true, as appellant asserts, that many employees of both exempt and nonexempt organizations are equally vulnerable to the risks of unemployment, the distinction drawn between these groups of employees in terms of eligibility for unemployment compensation is not necessarily an impermissible one. For it has long been recognized that "[i]n establishing a system of unemployment benefits the legislature is not bound to occupy the whole field. It may strike at

---

7. Moreover, the Court has "repeatedly held that inequalities which result from a singling out of one particular class for * * exemption, infringe no constitutional limitation." Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245 (1937), and cases cited therein.

8. Von Stauffenberg v. District Unemployment Compensation Board, *supra* note 4, 269 A.2d at 111.

9. For example, retirement, survivors and disability benefits under the Social Security Act are all tied to earlier employee contributions. 42 U.S.C. § 401 (1964).

the evil where it is most felt, * * * or where it is most practicable to deal with it * * *. It may exclude others whose need is less, * * * or whose effective aid is attended by inconvenience which is greater * * *." Carmichael v. Southern Coal & Coke Co., *supra*, 301 U.S. at 519–520, 57 S.Ct. at 877. (Citations omitted.) *See, e. g.*, Schilb v. Kuebel, *supra*, 404 U.S. at 364, 92 S.Ct. at 30; Dandridge v. Williams, *supra*, 397 U.S. at 486–487, 90 S.Ct. 1153, 25 L.Ed.2d 491; McDonald v. Board of Election Com'rs, 394 U.S. 802, 809, 811, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); West Coast Hotel Co. v. Parrish, 300 U.S. 379, 400, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

■ In the instant case, it is clear that denial of benefits to employees of exempt organizations is amply justified by considerations of administrative convenience and expense in the payment and measurement of benefits. *See, e. g.*, Carmichael v. Southern Coal & Coke Co., *supra*, 301 U.S. at 511, 57 S.Ct. 868. Thus, given the essentially correlative nature of the scheme Congress has chosen to employ, so long as the exemption itself is permissible the corresponding denial of benefits must likewise be valid. And since exemption of religious and charitable organizations is a concededly proper exercise of legislative power, exclusion of employees of such organiza-

tions from the benefit provisions of the Act cannot be deemed unreasonable.

■ Appellant contends further, however, that the constitutionality of the challenged classification should be judged not on the basis of the traditional "reasonableness" standard but, rather, on the more stringent compelling governmental interest test. Under this latter standard, the Supreme Court has declared that any classification which burdens the exercise of a constitutional right [10] must be deemed unconstitutional as a denial of equal protection unless shown to be necessary to promote compelling governmental interests.[11]

■ In an effort to invoke the protection of this doctrine, appellant asserts that denial of benefits to employees of religious organizations as a means to effectuate grant of an exemption to such organizations infringes upon the rights of these employees under the establishment clause of the First Amendment.[12] The establishment clause, however, "does not say that in every and all respects there shall be a separation of Church and State." Zorach v. Clauson, 343 U.S. 306, 312, 72 S.Ct. 679, 683, 96 L.Ed. 954 (1952). Rather, the right not to support religious activity achieves constitutional dimensions only when such support constitutes "an establishment of religion." Thus, despite appellant's disclaimer of any intent to challenge the validity of the exemption, the compelling governmental interest standard becomes appli-

---

10. The term "constitutional right" in this context has been interpreted liberally so as to include "fundamental" rights which, although not explicitly mentioned in the Constitution, have been held to be constitutionally protected. *See, e. g.*, Schilb v. Kuebel, 404 U.S. 357, 365, 92 S.Ct. 30, 479 L.Ed.2d 502 (1971) (right to bail); Kramer v. Union Free School District No. 15, 395 U.S. 621, 627, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (right to vote); Shapiro v. Thompson, *supra* note 5, 394 U.S. at 634, 89 S.Ct. 1322 (right to travel); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right to privacy); Bates v. Little Rock, 361 U. S. 516, 524, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960) (right of association).

11. The compelling governmental interest test is applicable also where the classification is based upon suspect criteria. *See, e. g.*, Williams v. Rhodes, 393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (political beliefs); Loving v. Virginia, 388 U.S. 1, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race); Braunfeld v. Brown, 366 U.S. 599, 603, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961) (religion); Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (national origin).

12. In pertinent part, the First Amendment provides that "Congress shall make no law respecting an establishment of religion * * *."

cable to this case only if the exemption is itself violative of the First Amendment.

In Walz v. Tax Com'n of City of New York, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), the Supreme Court held that the tax exemption of real property used solely for religious purposes does not constitute an unconstitutional establishment. In reaching this result, the Court declared that "[t]here is no genuine nexus between tax exemption and establishment of religion." *Id.* at 675, 90 S.Ct. at 1415. As in *Walz*, Congress here "has not singled out one particular church or religious group or even churches as such; rather, it has granted exemption to all houses of religious worship within a broad class of * * * nonprofit, quasi-public corporations * * *." *Id.* at 673, 90 S.Ct. at 1413. Moreover, the exemption challenged here involves a considerably lesser degree of governmental entanglement with religion than the property tax exemption upheld in *Walz*. In *Walz* the exempt religious organizations received the benefit, not only of the exemption, but of the fire and police protection subsidized by the tax as well. Under the District of Columbia Unemployment Compensation Act, however, neither the organizations nor their employees derive any benefit from the tax funds collected. As a result, we must conclude that exemption of religious organizations from payment of the unemployment compensation tax does not violate the establishment clause of the First Amendment and, further, that the compelling governmental interest test is therefore inapplicable to the instant controversy.

We do not decide today that denial of benefits to employees of exempt organizations under the District of Columbia Unemployment Compensation Act is wise, that it best fulfills the social and economic objectives Congress might ideally espouse, or that a more just and humane system could not be devised. Rather, we hold only that if the goals sought are legitimate, and the classification adopted is reasonably related to achievement of those goals, the action of Congress must be upheld. *See, e. g.,* Richardson v. Belcher, *supra,* 404 U.S. at 84, 92 S.Ct. 254, 30 L.Ed.2d 231; Dandridge v. Williams, *supra,* 397 U.S. at 487, 90 S.Ct. 1153; Flemming v. Nestor, *supra,* 363 U.S. at 611, 80 S.Ct. 1367.

Affirmed.