**TEMPORARIES INCORPORATED, Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COMPENSATION BOARD, Respondent.**

No. 6765.

District of Columbia Court of Appeals.

Argued Jan. 24, 1973.

Decided April 23, 1973.

---

Michael A. Schuchat, Washington, D. C., for petitioner.

George A. Ross, Washington, D. C., with whom Russell L. Carter, Washington, D. C., was on the brief, for respondent.

Before FICKLING, KERN and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This is an appeal from a decision of the District of Columbia Unemployment Compensation Board (hereinafter the Board) holding June 1, 1972, that under D.C.Code 1972 Supp., § 46–303(c)(3)[1] petitioner's contribution rate for unemployment compensation insurance would be the standard 2.7 percent in that the Board found petitioner did not qualify for the lower special rate determined to be at that time 1.1

1. In view of the issue raised, we set forth this section of the Code in full.

The standard rate of contributions shall be 2.7 per centum, except that after December 31, 1971, each employer newly subject to this chapter shall pay contributions at a rate equal to the average rate on taxable wages of all employers for the preceding calendar year (rounded to the next higher one-tenth of 1 per centum), or 1 per centum, whichever is higher (not exceeding 2.7 per centum) until he has been an employer for a sufficient period to meet the requirement to qualify for a reduced rate as provided in paragraph (4) of this subsection; thereafter, his contribution rate shall be determined in accordance with the provisions of such paragraph (4).

percent.[2] According to the Board the use of the latter rate was limited by the Code to employers who first became subject to the Act after December 31, 1971. The Board's conclusion was based on the finding that appellant became subject to the Act some time prior to December 31, 1971, and therefore did not qualify for the lower rate.

The parties have stipulated the issues to be as follows:

(a) Whether the provisions of Title 46, D.C.Code, Supp. V, Section 303(c)(3) applying to "employers newly subject to this chapter" include employers whose liability for contribution began prior to December 31, 1971 and who have not been subject to the Act for a sufficient period to meet the requirements to qualify for a reduced rate.

(b) Whether the decision of the respondent Board is contrary to the clear terms of Section 303(c)(3).

(c) Whether the decision of the respondent Board arbitrarily discriminates against petitioner and denies him equal protection of the law.

The facts as stipulated show that: the petitioner has been an employer subject to the District of Columbia Unemployment Compensation Act since October 4, 1969, and has not been subject thereto for a sufficient period of time to qualify for a reduced rate provided for in D.C.Code 1972 Supp., § 46–303(c)(3);[3] petitioner has paid contributions at the standard rate of contribution, 2.7 percent, notwithstanding its experience if applicable as alleged would qualify it for a lower rate; the average rate on taxable wages of all employers for the preceding calendar year (1971) was determined by the Board to be 1.1 percent; and petitioner was notified by the Board that its contribution rate would remain at 2.7 percent for calendar year 1972 in that it did not qualify under the amended Code section as an employer "newly subject to the [Act]".[4] Petitioner appealed the Board's determination of its contribution rate, which appeal was denied as a matter of law by the Contribution Rate Review Committee of the Board which stated:

Appellant does not qualify for the reduced rate provided by Section 3(c)3 [sic] because the benefits of this provision are limited to employers "newly subject" to the Act "after December 31, 1971". Appellant, on the other hand, was liable before December 31, 1971.

Appellant's tax rate must be determined by the provisions of Section 3(c)4A [sic]. Since it did not become a liable employer until October 1969, its account could not have been charged with benefits paid throughout the 36 consecutive calendar-month period ending on the computation date, June 30, 1971. Consequently, its correct rate for the year 1972 is the standard rate of 2.7 percent.

It is the contention of the petitioner that the amended provisions of the Act should be interpreted to extend the reduced rate to any employer who has not been an employer for a sufficient period to qualify for a reduced rate based on experience. The respondent submits that petitioner is not a new employer as contemplated in the Act since it has been subject to the Act since October 4, 1969.

2. The Unemployment Compensation program is financed by contributions made by employers based upon their total wages paid during the calendar year. The percentage figures referred to in this opinion are the percentage of the total wages that must be paid into the Unemployment Compensation program, generally called a contribution rate.

3. After three years an employer's contribution rate is based on experience, i. e., the claims of its former employees. Petitioner's computation date was June 30, 1971. See quotation from Contribution Rate Review Committee, infra.

4. See note 1, supra.

The statutory language is quite clear. It provides that the standard rate of contribution shall be 2.7 percent "except that after December 31, 1971, each employer *newly subject* to this [Act] shall pay contributions at a rate equal to . . . etc." (Emphasis supplied.) The latter rate was determined to be 1.1 percent for which petitioner claimed it qualified.

The above language of the amended provisions of section 303(c)(3), *supra,* is unambiguous and permits of only one interpretation, to wit: each new employer who first registers and becomes subject to the Act after December 31, 1971, is granted the reduced rate.

■ The word "newly" in the Act must have been used by the Congress both knowingly and purposefully. "Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them." Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). "Newly" as used herein could have but one meaning and that is that the contribution rate under the exception is applicable only to employers who first became subject to the Act after December 31, 1971. The Congress apparently saw fit by this provision not to reduce the rates of an employer already covered by the Act.

■ Since under the agreed stipulation of facts the petitioner first qualified under the Act some two years earlier, it cannot be considered to be an employer "newly" subject to the Act after December 31, 1971, and accordingly it is not entitled to the reduced rate. Had the Congress not used the word "newly" in the Act it would have achieved a quite different result. Many years ago the Supreme Court said:

> [But] where a law is expressed in plain and unambiguous terms, whether those terms are general or limited, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. . . . [Lake County v. Rollins, 130 U.S. 662, 671, 9 S.Ct. 651, 652, 32 L.Ed. 1060 (1889).]

The petitioner further contends that the decision of the respondent Board is unconstitutional in that it arbitrarily discriminates against employers such as petitioner, favors businesses which commenced after the effective date of the statute, and denies the petitioner the equal protection of the law.

The Supreme Court of the United States has passed on the question of the constitutionality of state unemployment compensation laws that apply differently to different employers. In Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937), the Supreme Court held that the Alabama Unemployment Compensation Law did not violate the due process and equal protection clause of the Federal Constitution. In *Carmichael* at 510–511, 57 S.Ct. at 873 the Court stated:

> It is argued here, and it was ruled by the court below, that there can be no reason for a distinction, for purposes of taxation, between those who have only seven employees and those who have eight. Yet, this is the type of distinction which the law is often called upon to make.[5] It is only a difference in numbers which marks the moment when day ends and

---

5. St. Louis Consol. Coal Co. v. Illinois, 185 U.S. 203, 207, 22 S.Ct. 616, 46 L.Ed. 872 (coal mines employing five or more subject to inspection); McLean v. Arkansas, 211 U.S. 539, 551, 29 S.Ct. 206, 53 L.Ed. 315 (mines employing ten or more required to measure coal for payment of wages before screening); Booth v. Indiana, 237 U.S. 391, 397, 35 S.Ct. 617, 59 L.Ed. 1011 (mines required to supply washhouses upon demand of twenty employees); Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571, 576, 35 S.Ct. 167, 59 L.Ed. 364; Middleton v. Texas Power & L. Co., 249 U.S. 152, 159, 39 S.Ct. 227, 63 L.Ed. 527 (employers of five or more included within workmen's compensation act).

night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between the proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not.

Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others. . .. . [Footnote renumbered.]

The reasoning of the Supreme Court in that case is apropos here. Further, we note it was applied in the recent case of Von Stauffenberg v. District Unemployment Compensation Board, 148 U.S.App. D.C. 104, 107, 459 F.2d 1128, 1131 (1972), where the court stated:

If the challenged classification rests upon some "reasonable" basis, it does not offend the Constitution merely because it "is not made with mathematical nicety, or because in practice it results in some inequality." Lindsley v. National Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911) . . . .

The Circuit Court went on to hold "that if the goals sought are legitimate, and the classification adopted is reasonably related to achievement of those goals, the action of Congress must be upheld." Von Stauffenberg, *supra*, 148 U.S.App.D.C. at 109, 459 F.2d at 1133.

■ In fact it is apparent that the law in this area is well settled that "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." [6]

The purpose intended by the classification embodied in this statutory scheme is to encourage new business and the resultant increased employment in the District of Columbia so as to provide a broader tax base for the District. Such a goal is a legitimate one and the classification adopted herein is reasonably adapted to the achievement of that goal.

Thus, finding the statute before us clear and unambiguous so as to preclude the special rate being applied to the petitioner, and finding the statute constitutional as applied, we accordingly must affirm.

Affirmed.

---

6. McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).