Ronald ANTHONY, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent.

No. 85–1132.

District of Columbia Court of Appeals.

Submitted June 16, 1986.

Decided July 23, 1987.

Ronald Anthony, pro se.

N. Denise Wilson-Taylor, Washington,
D.C., for respondent.

Before FERREN, BELSON and
STEADMAN, Associate Judges.

PER CURIAM:

Petitioner Ronald Anthony appeals from
a Department of Employment Services
(DOES) determination that he failed to
qualify for unemployment benefits. We
affirm.

Throughout calendar year 1981, petition-
er worked for the Dallas Fargo Company.
He was laid off on December 31, 1981. He
filed for unemployment benefits on Novem-
ber 3, 1982. While testimony at a hearing
on his claim revealed that petitioner had
worked all of calendar year 1981, that testi-
mony also revealed that because Dallas
Fargo was having financial difficulty, he
was paid only in two lump sums, a $3,000
payment made in the quarter ending June
30, 1981, and a $3,000 payment made in the
quarter ending December 31, 1981. The
hearing examiner determined that because
he had not been paid in two quarters of the
"base period," see *infra*, he did not qualify
for unemployment benefits.

The controlling statute sets forth the test
a claimant must meet in order to receive
benefits:

> To qualify for benefits an individual
> must have: (1) Been paid wages for em-
> ployment of not less than $400 in 1 quar-
> ter in his base period; (2) been paid
> wages for employment of not less than
> $450 in not less than 2 quarters in such
> period; and (3) received during such peri-
> od wages the total amount of which is
> equal to at least one and one-half times
> the amount of his wages actually re-
> ceived in the quarter in such period in
> which his wages were the highest.

D.C.Code § 46–108(c) (1986 Supp.).[1] "Base
period" is defined as the first four of the
last five completed calendar quarters im-
mediately preceding the first day of the
first week with respect to which the claim-
ant files for unemployment benefits. D.C.
Code § 46–101(6), (8) (1981). Since petition-

---

1. "Calendar quarter" means the period of three
consecutive months ending on March 31st, June
30th, September 30th, or December 31st. D.C.
Code § 46–101(11) (1981).

er filed for benefits on November 3, 1982, his base period ran from July 1, 1981, to June 30, 1982.[2]

The record reveals that petitioner was paid in only one quarter of the base period. He received no wages in the first quarter (July 1 through September 30, 1981), $3,000 in the second quarter (October 1 through December 31, 1981), no wages in the third quarter (January 1 through March 30, 1982), and no wages in the fourth quarter (April 1 through June 30, 1982). Petitioner, however, argues that he was *employed* during two of the four calendar quarters (July 1 through September 30, 1981, and October 1 through December 31, 1981), and the fact that he was paid in a lump sum in one quarter should not defeat his claim.

█ We defer to an agency's interpretation of a statute it administers unless that interpretation is unreasonable in light of prevailing law. *Gomillion v. District of Columbia Dep't of Employment Servs.*, 447 A.2d 449, 451 (D.C.1982); *see Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567, 570 (D.C.1985); *McMullen v. Police & Firefighters Retirement & Relief Bd.*, 465 A.2d 364, 366 (D.C. 1983) (per curiam) (great weight given to agency's reasonable construction of statute it administers). We reverse only where the agency's interpretation is plainly erroneous or inconsistent with the statute. *E.g.*, *Weaver Bros., Inc. v. District of Columbia Rental Housing Comm'n*, 473 A.2d 384, 388 (D.C.1984). Here, DOES has read the statute to require that a claimant actually be paid wages in two of the four calendar quarters of the base period. Accordingly, DOES concluded that because petitioner "was paid wages for employment during only one quarter in his base period, he does not qualify and is ineligible for benefits."

█ DOES's interpretation is supported by the legislative history of the statute. Under the original version of the District of Columbia Unemployment Compensation Act ("the Act"), a claimant's eligibility for benefits did not depend on the wages received by the claimant, but rather on the length of his or her employment:

> An unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found by the [District Unemployment Compensation] Board— ... (2) that he has performed employment in at least thirteen weeks within the period of fifty-two weeks ending with the week in which he was last engaged in employment....

District of Columbia Unemployment Compensation Act, Pub.L. No. 74–386, § 10(a), 49 Stat. 946, 950 (1935).

Five years after the statute's initial enactment, Congress amended the Act, introducing the "base period" mechanism and substituting for the former eligibility provisions a requirement that the applicant "during his base period [have] *been paid wages* for employment by employers equal to not less than the amount [as specified in table]." Act of July 2, 1940, Pub.L. No. 76–719, Tit. 1, 54 Stat. 730, 733 (1940) (emphasis added). At the same time it moved from a duration of employment to a "wages paid" measure of eligibility, the amendment placed the calculation of benefits "entirely on a monetary basis rather than a time basis." H.R.Rep. No. 2268, 76th Cong., 3d Sess. 1 (1940); *accord,* 86 Cong.Rec. 6926 (1940) (statement of Rep. Randolph). The representative who authored the amendment explained that, while the provisions in effect until then had required benefits to be "worked out on a complicated time basis," the amendment would change the Act's procedure to effectuate "a simple money basis." 86 Cong. Rec. 6928 (1940) (statement of Rep. McGehee). Thus, the shift to monetary rather than temporal requirements, both for eligibility and for calculation of benefits, re-

2. Petitioner filed for benefits on November 3, 1982. The fifth previously completed calendar quarter, then, ended on September 30, 1982. Similarly, the fourth quarter ended on June 30, 1982, the third quarter on March 31, 1982, the second quarter on December 31, 1981, and the first quarter on September 30, 1981. The first quarter began, then, on July 1, 1981. The base period statutorily defined as the first four of the last five completed calendar quarters immediately preceding the first day of the benefit year, therefore, ran from July 1, 1981, to June 30, 1982.

flected a legislative desire "to simplify administration of the unemployment-compensation program." *Id.* at 6926 (statement of Rep. Randolph).

In 1954, Congress first introduced the requirement that a claimant have been paid in two calendar quarters of his or her base period, apparently intending to continue a "simple money basis" method of administration. The new section read:

> To qualify for benefits an individual must have been paid wages for employment in his base period totaling not less than the amount ... [specified in table], *and such wages must have been in at least two calendar quarters* in his base period.

Act of August 31, 1954, Pub.L. No. 83–721, § 7(c), 68 Stat. 988, 993 (1954) (emphasis added). The Senate Report clarified that this provision would "require those wages *to be received* in two calendar quarters." S.Rep. No. 1765, 83d Cong., 2d Sess. 3 (1954) (emphasis added). This provision was amended again in 1962, bringing it substantively in accord with its present form:

> to qualify for benefits an individual must have (1) been paid wages for employment of not less than $130 in one quarter in his base period; (2) *been paid wages for employment* of not less than $276 *in not less than two quarters* in such [base] period. . . .

Act of March 30, 1962, Pub.L. No. 87–424, § 6(c), 76 Stat. 46, 48 (1962). (Emphasis added.) Despite the amendment's insertion of the words "for employment" in subsection (2), *i.e.*, in the two calendar quarter provision, the conference committee clarified that, as before, a qualifying individual must have *"received* wages of [the specified amount] in at least two quarters of his base period." 108 Cong.Rec. 4653 (1962) (statement, Amendments to the District of Columbia Unemployment Compensation Act as Approved by Conferees) (emphasis added).

As the Senate Report accompanying the 1954 amendment made clear, the "two calendar quarters" requirement was intended to tighten the qualifying provisions "to insure the compensation only of individuals who are substantially attached to the labor market ... [and to] eliminate individuals who earn substantial wages in 1 or 2 transactions, or who are employed for relatively short periods of time." S.Rep. No. 1765, 83d Cong., 2d Sess. 5 (1954). In light of its previous use of monetary requirements to simplify the Act's administration, it is reasonable to assume that Congress chose "wages received" as the basis for determining eligibility because it considered the receipt of wages to be the most expedient measurement of an applicant's "attachment to the labor market." While the method chosen by Congress may have been inexact, it was a rational means of curtailing benefits for short term and sporadic employees, while maintaining an administrative procedure that is both workable and determinate.

The interpretation we uphold here is consistent with our interpretation of a closely related section of the same statute in *Vedder v. District Unemployment Compensation Board*, 360 A.2d 485, 487 (D.C.1976) (per curiam), where we stated:

> We read the words "actually received" as used in the statute [D.C.Code § 46–307(c) (1973) ] as an effort to make plain that the high quarter computation is not intended to include wages or salary earned, as reflected on the books, but not paid to the employee. Although income taxes withheld do not reach the pay envelope, they nonetheless are credited to the wage earner and inure directly to his benefit in satisfaction of his eventual tax liability. [Footnote omitted.]

While wages withheld to pay taxes can be said to have been received by the wage earner, the same cannot be said of amounts merely shown on the employer's books as owed the wage earner.[3] *Cf. Jaime v. D.C.*

---

**3.** Anthony also argues that because the company paid unemployment insurance premiums with respect to him throughout the relevant base period, he is entitled to benefits. DOES deemed that any such premium payments were irrelevant to petitioner's claim. In support of its position, DOES pointed out that under the statutory scheme a claimant's eligibility for

*Dep't of Employment Servs.*, 486 A.2d 692, 693 (D.C.1985) ("wages paid" for purposes of determining amount of benefits does not include wages earned but not received).

In sum, both the language and the history of D.C.Code § 46–108(c) supports DOES's construction of the statute as requiring that the claimant be *paid* wages in two quarters as a condition for eligibility. Since the Department's construction is not inconsistent with the language or legisla-

tive history of the statute, and since the petitioner was paid wages in only one of his base period's calendar quarters, we affirm the denial of benefits.

*Affirmed.*

---

compensation does not depend upon the employer's having paid premiums. We agree. *See* D.C.Code §§ 46–101 to –111 (1981 & 1986 Supp.).