**Lana NELSON, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**No. 85–1317.**

District of Columbia Court of Appeals.

Argued Sept. 16, 1986.

Decided Sept. 14, 1987.

Diana M. Savit, Washington, D.C., for petitioner.

Michael A. Milwee, Washington, D.C., for respondent.

Before PRYOR, Chief Judge, and MACK and ROGERS, Associate Judges.

PER CURIAM:

In this appeal, petitioner Lana Nelson challenges the appeals examiner's interpretation of the two calendar-quarters requirement of D.C.Code § 46–108(c)(2) (1986 Supp.), and on a variety of grounds, the decision of respondent, the District of Columbia Department of Employment Services (agency), that her *pro se* second-level intra-agency appeal was untimely. We reverse and remand for the agency to make findings relating to the adequacy of the notice of the appeals examiner's decision and the notice of appeal procedure, and, in the event it reaches the merits, to determine whether the appeals examiner erred as a matter of law in denying petitioner's application for benefits because her annual compensation was in the form of a single advance payment.

I

Ms. Nelson was president and executive director of Sunshine International for sixteen years until November 15, 1984, when it went out of business due to financial difficulties. She regularly received a lump sum advance payment once a year, the last in March 1984, when she received $20,000. Throughout its operation, Sunshine International regularly paid unemployment taxes to the District of Columbia.

Ms. Nelson's application for unemployment compensation was initially denied on the ground she had not received wages in at least two quarters of the applicable base period. She appealed and received a hearing before an appeals examiner. After the hearing, the examiner instructed her that an appeal of his forthcoming decision to the

agency's Office of Appeals and Review had to be sent within ten days from the date of the decision (excluding weekends and holidays). The examiner issued a decision adverse to Ms. Nelson on June 14, 1985.

By letter of August 19, 1986, Ms. Nelson requested information from the agency on the status of her notice of appeal, which she claimed she had filed by letter on July 8, 1985. She also claimed her notice of the appeals examiner's decision was inadequate. Her stated reason was that

> I received notice of the Decision while I was out of town. At the close of my interview with the Examiner, I asked him when I could expect a decision and was told that no specific date could be given. Therefore, as receipt of this Decision was untimely, I was unable to submit this appeal within the time stipulated.

## II.

The agency responded on August 27, 1985 that it had never received the July 8 letter, but, in any event, a July 8 letter was not a timely appeal because it exceeded the ten-day mandatory filing period of D.C.Code § 46–112(e) (1981).

■ Ms. Nelson contends that because she told the examiner she would be out of town, the agency's reliance on its normal practice of first-class mailed notice was not reasonably calculated to apprise her of the decision and to afford her an opportunity to appeal. *See generally Gosch v. District of Columbia Department of Employment Services,* 484 A.2d 956 (D.C.1984); *Dozier v. District of Columbia Department of Employment Services,* 498 A.2d 577 (D.C. 1985); *Selk v. District of Columbia Department of Employment Services,* 497 A.2d 1056 (D.C.1985); *Thomas v. District of Columbia Department of Employment Services,* 490 A.2d 1162 (D.C.1985). We disagree. The procedure relied upon by the agency is, in general, reasonable and adequate. The burden on the agency of guaranteeing actual notice on an individualized basis in each case clearly outweighs the burden on claimants, who it is reasonable to assume, in general have alternative means of assuring the receipt of their own mail.

Ms. Nelson also alleges, in an affidavit filed with her brief in this court, that she asked the appeals examiner, after the hearing, whether she could telephone the agency regarding the status of her case, and that the examiner responded that she could only receive notice of the decision by ordinary mailing procedures. She contends that because of her unavoidable need to be out of town for extended periods, the agency should at least have allowed her to telephone periodically to check on the status of her case. On its face, this claim is plausible; responding to telephone calls in those cases where a claimant is away from home, and awaiting notice of a decision, would not appear to place too great a burden on the agency. Claimants who must travel and who have no realistic means of checking their mail should be allowed some means of checking on their case. Otherwise, they can travel only at the risk of losing their appeal rights.

Ms. Nelson further alleges that she was misled by a statement on the form that is used to appeal the initial agency decision to an appeals examiner for a hearing. This form states, "IF YOUR APPEAL IS FILED LATE, THE REASON(S) MUST ALSO BE INCLUDED." She argues that this language suggested to her that the entire agency appeals process, including second-level appeals, "is not so rigid that it cannot be extended for good reason." We agree that the agency's notice was ambiguous and that Ms. Nelson might have been lulled into inactivity by the agency's failure to clarify her rights.[1]

---

1. *See Moore v. District of Columbia Department of Employment Services,* 518 A.2d 710 (D.C. 1986), *as modified on rehearing,* 524 A.2d 39 (D.C.1987); *Cobo v. District of Columbia Department of Employment Services,* 501 A.2d 1278 (D.C.1985); *Bailey v. District of Columbia Department of Employment Services,* 499 A.2d 1223 (D.C.1985); *Kittrell v. District of Columbia Department of Employment Services,* 498 A.2d 1178 (D.C.1985); *Ploufe v. District of Columbia Department of Employment Services,* 497 A.2d 464 (D.C.1985).

■ Because Ms. Nelson has raised these two contentions for the first time on appeal, the record is insufficient for this court to make a final resolution on either question. Ordinarily, the failure to present a claim below would preclude an appellant from raising the same contention on appeal. *Arthur v. District of Columbia Nurses' Examining Board*, 459 A.2d 141, 145 n. 7 (D.C.1983). Here, however, a *pro se*[2] applicant for entitlement benefits has potentially been misled as to her appellate rights and may have received an inadequate opportunity to present her arguments to the agency. The only opportunity for her to protest was by means of a letter advising the agency that its notification procedures were inadequate, which she sent, and the record reveals that she has undertaken good faith efforts to adjudicate her claim properly.

Accordingly, we reverse and remand the case to the agency for an appropriate hearing and factual findings on: (1) whether Ms. Nelson was in fact misled in her second-level appeal by the statement on the appeals form at the initial level; (2) if so, whether she acted to her detriment in reliance on the representation in that form; and (3) if so, whether she has stated good reasons for her failure to make a timely appeal. If the agency rules against Ms. Nelson, it should then make factual findings as to: (1) whether the appeals examiner told her that she could not telephone the agency; (2) whether there is any procedure available for making a status inquiry; and (3) if not, whether there should be such a procedure in light of the burden it would place on the agency as balanced against fairness to applicants. *See generally Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

## III

Proceeding to the merits, Ms. Nelson argues that in view of the length of her employment and the fact that her company fully paid D.C. unemployment compensation taxes, the agency's "mechanical application of the statutory test" is contrary to the underlying purpose of the Unemployment Compensation Act, contrary to other sections of the Act, and ignores "the reality of petitioner's salary payment arrangement with her employer...." The agency's interpretation of the statute, she continues, has the effect of denying benefits to persons who are intended to be covered (*i.e.,* permanent employees receiving sufficient compensation) simply because an employer chooses to pay wages in a nontraditional advance in a single payment. Thus, she concludes, there is an untenable result because she has worked in a full-time capacity for sixteen years, her employer has paid unemployment taxes throughout this period, and she is otherwise fully eligible for unemployment benefits but for the lump sum compensation scheme.

Only the appeals examiner has ruled on the merits of the case. Because her second-level appeal to the agency was dismissed as untimely, Ms. Nelson has failed to exhaust her administrative remedies on the merits of the case. Section 46–112(e) provides in pertinent part that, "Any decision of an appeal tribunal which is not so modified or so appealed within such 10–day period is final for all purposes, *except as provided in § 46–113....*" (Emphasis supplied.) Section 46–113 provides that, "Any person aggrieved by the decision of the [agency] may seek review of such decision in the District of Columbia Court of Appeals in accordance with the District of Columbia Administrative Procedure Act." *See* D.C.Code § 46–116(a) (1986 Supp. notes). This language means that only the timeliness issue is "final" for purposes of appellate review and that the agency is entitled to make a determination on the merits, subject to further appellate review, should it reach this issue on remand.

This court has recently addressed the two-quarters requirement of `§ 46–108(c).`[3]

---

**2.** Counsel did not appear for Ms. Nelson during the proceedings before the agency.

**3.** D.C.Code § 46–108(c) provides in pertinent part:

In *Anthony v. District of Columbia Department of Employment Services*, 528 P.2d 883 (D.C.1987), the court deferred to the agency's interpretation that § 46–108(c) requires a claimant actually to be paid wages in two of the four calendar quarters of the base period. The court viewed the language of § 46–108(c) as susceptible of being so construed: the statute does not require a contrary construction where a claimant is owed wages for work done. Citing *Vedder v. District Unemployment Compensation Board*, 360 A.2d 485, 487 (D.C.1976) (per curiam) (withheld taxes properly included in computing qualifying calendar wages) as reaching a consistent result, the court affirmed the agency's determination that Mr. Anthony was ineligible for benefits because, due to his employer's financial difficulties his wages were deferred and paid only in one quarter of his base period. *Anthony, supra.*

The agency in its brief on appeal has offered the same response here. It contends that the hearing examiner correctly determined Ms. Nelson's ineligibility because Ms. Nelson was only paid in one quarter of her base period. It argues that such interpretation of the statute comports with its plain language, that the statute's use of the words "paid," "been paid," and "actually received" is inconsistent with Ms. Nelson's entitlement interpretation, and that the strict two-quarter eligibility requirements have been a feature of the statute for decades, *citing* Pub.L. No. 74–386, ch. 794, § 1, 49 Stat. 946 (1935); Pub.L. No. 83–721, ch. 1139, 68 Stat. 988 (1954). In so responding, however, the agency has not addressed Ms. Nelson's contentions that exclusion of an entire category of claimants who receive a lump-sum advance payment is inconsistent with the purpose of the statute and its overall scheme.[4] Nothing in *Anthony, supra,* suggests that such contentions were raised either at the agency level or in the appeal to this court.[5]

Accordingly, if, on remand, the agency reaches the merits, it should consider whether its plain meanings interpretation of § 46–108(c)(2) is consistent with the twofold purposes of the Unemployment Compensation Act, which are "to protect employees against economic dependency caused by temporary unemployment and to reduce the necessity of relief or other [government-subsidized] welfare programs." *Von Stauffenberg v. District Unemployment Compensation Board*, 148 U.S.App.D.C. 104, 107, 459 F.2d 1128, 1131 (1972) (humanitarian goals served by employer contributions); *see also Jones v. District Unemployment Compensation Board*, 395 A.2d 392, 395 (D.C.1978); *District Unemployment Compensation Board v. Hahn*, 130 U.S.App.D.C. 254, 257, 399 F.2d 987, 990 (1968).[6]

*Judgment is reversed and case remanded for further proceedings consistent with this opinion.*

MACK, Associate Judge, concurring:

I write separately to explain that while I am bound by this court's decision in *Anthony v. District of Columbia Department of Employment Services*, 528 A.2d 883 (D.C. 1987), I cannot agree that disqualification from unemployment compensation can be based solely on the timing of the transfer of an employee's wages. I am persuaded that *Anthony's* formalistic interpretation

To qualify for benefits an individual must have: (1) Been paid wages for employment of not less than $400 in 1 quarter in his base period; (2) been paid wages for employment of not less than $450 in not less than 2 quarters in such period; and (3) received during such period wages the total amount of which is equal to at least one and one-half times the amount of his wages actually received in the quarter in such period in which his wages were the highest.

4. *Hughes v. District of Columbia Department of Employment Services*, 498 A.2d 567 (D.C.1985);

*MCM Parking Co. v. District of Columbia Department of Employment Services*, 510 A.2d 1041, 1043–44 (D.C.1986); *Cumming v. District Unemployment Compensation Board*, 382 A.2d 1010, 1013 (D.C.1978).

5. Mr. Anthony was not represented by counsel in *Anthony.*

6. Counsel for Ms. Nelson has provided in her brief on appeal to this court a number of citations including references to the legislative history of the two-quarters requirement which may be of assistance to the agency upon remand.

of D.C.Code § 46–108(c)(2) (1986 Supp.) generates results inconsistent with explicit congressional intent and with the purposes underlying the Unemployment Compensation Act. On the merits of this case, therefore, I would conclude that Nelson's full-time employment during ten months of her base period satisfies the eligibility requirements of § 46–108(c)(2).[1]

Section 46–108(c)(2) provides in relevant part:

> To qualify for benefits an individual must have: ... (2) been paid wages for employment of not less than $450 in not less than 2 quarters in such [base] period.

*Anthony* relies on three grounds to support its determination that the physical transfer, rather than the earning, of the qualifying level of wages during two calendar quarters is a substantive requirement for eligibility: deference to the interpretation of the Department of Employment Services, legislative history, and case law. In my view, both the legislative history and the case law of this jurisdiction compel a contrary interpretation. Because of *Anthony's* reliance on "deference," I join Judge Rogers here in concluding that the agency is free to reconsider its view of § 46–108(c)(2), and I urge it to do so.

The principle underlying the two calendar quarter requirement of § 46–108(c)(2) is by no means obscure. When originally enacted in 1935, the Unemployment Compensation Act required employment in only one calendar quarter.[2] Pub.L. No. 74–386, ch. 794, § 10(a)(2), 49 Stat. 946, 950 (1935). Significant amendments to the Act in 1940 introduced the concepts of a "base period," Pub.L. No. 76–719, ch. 524, 54 Stat. 730, 731 (1940), and an "unemployment benefit table." *Id.* 54 Stat. at 732. Eligibility was then premised upon having been paid a certain amount of wages during the fifty-two weeks that constituted the base period without regard to the precise duration of employment during that time.[3] *Id.* 54 Stat. at 733. The 1943 revision of the Act incorporated verbatim the 1940 eligibility requirement. Pub.L. No. 78–65, ch. 117, § 9(b), 57 Stat. 100, 114 (1943).

In 1954, along with significant other reforms, Congress first introduced the two quarter eligibility requirement.[4] Pub.L No. 83–721, ch. 1139, § 7(c), 68 Stat. 988, 993 (1954). I think it clear that Congress' decision to couch eligibility in terms of wages in two quarters was not based upon concern for administrative ease or timing of the transfer of the wages. Rather, Congress was concerned with the broader purpose of compensating only those individuals who were "substantially attached to the labor market." The Senate report accompanying the reform explained:

> Section 7(c) would be changed to establish more realistic qualifying wage provisions, raising the minimum requirement from $150 to $276, raising the maximum provision from $250 to $1,035, and *requiring the claimant to have wages in at least 2 quarters of this base period.* Heretofore, the qualifying provisions of the District act were substantially less than those in other State acts, and it is felt that the provisions should be increased to insure the compensation only of individuals who are *substantially attached to the labor market. The 2–quarter requirement will eliminate in-*

---

1. On the jurisdictional issue raised here, I join the majority opinion.

2. Section 10(a)(2) provided that a person was eligible to receive benefits if "he performed employment in at least thirteen weeks within the period of fifty-two weeks ending with the week in which he was last engaged in employment." Pub.L. No. 74–386, ch. 794, § 10(a)(2), 49 Stat. 946, 950 (1935).

3. The 1940 revised § 10(a) provided that a person was eligible if "he has during his base period been paid wages for employment by employ-ers equal to not less than the amount appearing in [the unemployment benefit table]." Pub.L. No. 76–719, ch. 524, 54 Stat. 730, 733 (1940).

4. The 1954 revised eligibility provision stated: "To qualify for benefits an individual must have been paid wages for employment in his base period totalling not less than the amount [in the benefit table] ... and such wages must have been in at least two calendar quarters in his base period." Pub.L. No. 83–721, ch. 1139, § 7(c), 68 Stat. 988, 993 (1954).

*dividuals who earn substantial wages in 1 or 2 transactions, or who are employed for relatively short periods of time.*

S. REP. No. 1765, 83rd Cong., 2nd Sess. 5 (1954) (emphasis added). Seasonal and part-time employees with insubstantial or discontinuous ties to the labor market were targeted for exclusion from eligibility.

In my view, the *Anthony* construction of § 46–108(c)(2) leads to results diametrically opposed to the principles Congress announced. Under *Anthony*, individuals such as petitioner (and Anthony himself), who are indisputably "substantially attached to the labor market," are rendered ineligible merely because their employers made lump sum wage payments. By contrast, individuals who earn qualifying wages in one transaction in one quarter, but whose employers transfer the wages in two quarters, are eligible. Given Congress' explicit desire to eliminate from eligibility those "individuals who earn wages in 1 or 2 transactions," and retain those who are "genuinely attached to the labor market," the *Anthony* construction is incompatible with congressional purpose.[5]

---

5. *Anthony* relies on six excerpts from the legislative records of the 1940, 1954, and 1962 amendments for its conclusion that Congress intentionally chose the language "been paid" to substantively condition eligibility on actual receipt of wage payments. *Anthony, supra,* at 884–885. Two of the 1940 excerpts are references to the benefit computation provision of the Act, not the eligibility provision, the provision at issue here. *See* H.R.Rep. No. 2268, 76th Cong., 3d Sess. 1 (1940); *accord,* 86 CONG.REC. 6926 (1940) (statement of Rep. Randolph: "[t]he calculation of benefits is placed entirely on a monetary basis rather than a time basis"); 86 CONG. REC. 6928 (1940) (statement of Rep. McGehee: "[t]he *benefits* paid to the unemployed are now worked out on a complicated time basis and under the proposed act on a simple money basis") (emphasis added). From that same record, there are two excerpts referring to eligibility, as opposed to benefit computation, and neither suggest a simplification or administrative ease rationale. *See id.* at 6926 (statement of Rep. Randolph: "[t]he eligibility provision is changed from 13 weeks to 25 times an individual's weekly benefit amount, or $250, whichever is the lesser"); *id.* at 6929 (statement of Rep. McGehee: "[t]he unemployed to be eligible under the present act must have had 13 weeks of employment in the last 52 weeks and under the proposed act, he would be eligible if the wages in his base period equals to 25 times the individual weekly benefit amount, or $250, whichever is the lesser").

The third 1940 excerpt in *Anthony* refers to a general legislative desire to simplify administration. *Anthony, supra,* at 884; 86 CONG.REC. 6929 (1940). If from that general desire, *Anthony* draws the conclusion that the words "been paid" were specifically selected to effectuate the result of simplifying the eligibility qualification, Congress did not continue in that desire since the words were dropped from the 1954 Act. *See* Pub.L. No. 83–721, § 7(c), 68 Stat. 988, 993 (1954) ("and such wages must have *been in* at least two calendar quarters") (emphasis added).

The two excerpts in *Anthony* from the 1954 legislative record, *see Anthony, supra,* at 884, refer to the eligibility section, but only one of them supplies an explanation for the change in the language. It is that excerpt, indicating concern with genuine attachment to the labor market, which I rely upon. The other excerpt in *Anthony,* S.REP. No. 1765, 83d Cong., 2d Sess. (1954), is merely a different articulation of the language used in the statute and provides no substantive guide.

The final excerpt in *Anthony,* from the 1962 record, suggests that a reformulation of the statutory language "clarified" the statutory language. *Anthony, supra,* at 885; 108 CONG.REC. 4653 (1962). There is absolutely no evidence in the legislative record of the 1962 Act that concern for the timing of the transfer of wages was in issue, nor is there any evidence that simplification of the eligibility guidelines animated the change. *See* H.R.REP. No. 1038, 87th Cong., 1st Sess. (1961) (first House report explaining the changes); H.R.CONF.REP. No. 1264, 87th Cong., 1st Sess. (1961) (Conference disagreement); H.R.CONF.REP. No. 1474, 87th Cong., 2d Sess. (1962) (Conference agrees); 108 CONG.REC. 4653 (1962). Indeed, by focusing on that selection from the legislative record, *Anthony* ignores the underlying reason for the change in the provision. Under the 1954 Act, the eligibility provision in its totality referred to a benefit schedule table in explaining the amount of necessary qualifying wages. When the 1962 Act eliminated and replaced the benefit table with a flexible provision establishing a maximum weekly benefit amount, the reference to the table in the eligibility provision had to be eliminated too.

Indeed, the primary focus in *Anthony* on the narrow terminology which acts as the lead-in language for the eligibility requirement distorts the true history of the transformation of that requirement. *Anthony* generates the impression that one change in that language has occurred and that was in 1940 when, among Congress' numerous goals, it desired to simplify the program. In fact, the terminology has changed in each of the amendments: from "performed employment," to "been paid wages," to "wages been in," to "been paid wages for employment in." No conscious trend can be inferred from the

The arguments in *Anthony* reduce to the following: "While the method chosen by Congress [i.e., "been paid"] may have been inexact, it was a rational means of curtailing benefits for short term and sporadic employees, while maintaining an administrative procedure that is both workable and determinate." *Anthony, supra,* at 885. In light of results antithetical to explicit congressional intent, a layman would undoubtedly describe this language as a potential "loophole," rather than an "inexact" method. This is not a "rational means." The only plausible explanation for the choice of this language is Congress' justifiable failure to foresee the highly unusual situation of lump sum payments.

*Anthony* rests on no firmer ground in its reliance on our case law. *Anthony* represents the first case interpreting the two calendar quarter requirement of § 46–108(c)(2), but the requirement of substantial attachment as the key to eligibility is mirrored in our interpretations of other provisions of the Act. We have frequently "reiterate[d] that the principal test for eligibility in this jurisdiction is 'genuine attachment to the labor market.'" *Cumming v. District Unemployment Compensation Board,* 382 A.2d 1010, 1016 (D.C. 1978) (construing "unemployed"); *see also Johnson v. District Unemployment Compensation Board,* 408 A.2d 79, 82 (D.C. 1979) (construing "availability for work"); *Woodward & Lothrop, Inc. v. District of Columbia Unemployment Compensation Board,* 129 U.S.App.D.C. 155, 157, 392 F.2d 479, 481 (1968) (construing "availability for work").

Contrary to *Anthony,* neither *Vedder v. District of Columbia Unemployment Compensation Board,* 360 A.2d 485 (D.C. 1976), nor *Jaime v. District of Columbia Department of Employment Services,* 486 A.2d 692 (D.C.1985), provide any support

four consecutive changes in the lead-in language and indeed only by focusing on the provision as a whole can reasonable inferences be drawn regarding the meaning of the successive changes. Thus, comparison of the amendments indicates congressional concern with the establishment of the appropriate: (1) *duration* during which the prior employment must have oc-

for its position. In *Vedder,* petitioner's ineligibility for unemployment benefits was affirmed after this court rejected his claim that withheld taxes should be excluded from computation of qualifying calendar wages. *See* D.C.Code § 46–108(c)(3). It is clear that petitioner's claim of eligibility was properly rejected. His base period wages reflected highly lopsided earnings in one calendar quarter thereby indicating a sporadic employment pattern inconsistent with the acknowledged concern for "genuine attachment to the labor market." Moreover, as a matter of statutory interpretation, this court construed the words "actually received" to *include* that portion of an employee's wages withheld for income tax purposes despite the fact that such wages were never "actually received" by the employee. Thus, in order to effectuate legislative purpose, the plain language of the statute was clearly not controlling. *See Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 754 (D.C.1983) (en banc). *Jaime, supra,* is simply inapposite since eligibility was not the issue, but rather, computation of benefit level.

Denial of the claims of petitioner (and Anthony) also defeats the two-fold purposes of the Unemployment Compensation Act:

The primary goal of the District of Columbia Unemployment Compensation Act "is to protect employees against economic dependency caused by temporary unemployment and to reduce the necessity of relief or other welfare programs."

*Von Stauffenberg v. District Unemployment Compensation Board,* 148 U.S.App. D.C. 104, 107, 459 F.2d 1128, 1131 (1972) (citations omitted); *Jones v. District of Columbia Unemployment Compensation Board,* 395 A.2d 392, 395 (D.C.1978). The Act is designed to encourage compensation through employment rather than reliance

curred (from 13 weeks within 1 year, to 1 year, to 2 calendar quarters within 1 year); and (2) *amount* of work during that time as reflected by a qualifying level of wages (none in the 1935 Act which is one reason it had to be amended, a wage level derived from a benefit table in 1940 and 1954, and finally a fixed minimum wage level in 1962).

on welfare. *District Unemployment Compensation Board v. Hahn*, 130 U.S. App.D.C. 254, 257, 399 F.2d 987, 990 (1968). To that end, the humanitarian goal is effectuated not by government-subsidized entitlement programs but rather by employer contributions to the District Unemployment Fund. *Von Stauffenberg, supra*, 148 U.S. App.D.C. at 107, 459 F.2d at 1131. The *Anthony* interpretation both promotes enhanced reliance on government-subsidized programs and deprives otherwise qualified claimants of an economic buffer during difficult periods of unemployment. Indeed, the humanitarian underpinnings of this statute compel flexibility in interpretation particularly where, as here, a reasonable interpretation protects the interests of those who fund the program as well as the government's interests.

The inequity of the *Anthony* interpretation is manifest. Here, for sixteen years, the employer paid, and the District of Columbia accepted, unemployment taxes for an employee whom the District now claims to be ineligible for benefits under the Act. Not once in those sixteen years did the District disapprove of the lump sum compensation scheme when it accepted the annual tax payments. As administered, the unemployment compensation scheme generates the reasonable expectation that uncontested participation in the program results in entitlement to benefits to otherwise qualified employees.[6]

Moreover, there is no question that *but for* the timing of the transfer of wages, both petitioner and Anthony were eligible for benefits. Anthony was employed for thirteen years by the Dallas Fargo Agency and for six months during his base period.

The employer's decision to compensate Anthony on a semi-annual, lump sum basis (and Anthony's consent to such payment) was made necessary by the economic hardship faced by the employer—a factor outside Anthony's control. Petitioner was employed for sixteen years by Sunshine International and for ten months during her base period. And, although petitioner, as president of her small business, controlled the timing of the transfer of wages, she was never on notice that her decision to compensate on a lump sum basis would some day disqualify her from unemployment benefits.

In balancing equity and administrative ease, it seems obvious to me that the scale weighs heavily in favor of equity in this case. At a second level appeal, when a claimant challenges an initial disqualification based on lump sum compensation, the total administrative burden amounts to the performance of a few simple mathematical calculations. Administrative paralysis would hardly result from the individualized treatment of the relatively few claimants like petitioner and Anthony who receive compensation in lump sums. I urge the Department of Employment Services to reconsider its position on this issue.

PRYOR, Chief Judge, dissenting:

Looking to the merits of petitioner's argument, it appears that the pertinent language of the statute which controls eligibility for unemployment compensation, D.C. Code § 46–108(c) (1986 Supp.), is plain and straightforward. It requires a claimant to have "been paid" wages in at least two quarters of her base period. For me, this case does not involve so much a deference

---

6. In response to this equitable argument, *Anthony, supra*, at 885 n. 3, generates the inference that eligibility is independent of employer contributions to the system. While the eligibility provisions do not specifically condition eligibility on employer tax payments, the definitions of "employer" and "employment" are interlocked. D.C.Code §§ 46–101(1), (2) (1981). Thus, a potential claimant is generally not covered under the system unless his or her former employer is subject to payment of the unemployment compensation tax. *See Von Stauffenberg, supra*, 148 U.S.App.D.C. at 109, 459 F.2d at 1133 (denial of benefits to former employees of exempt orga-

nizations is reasonably related to achievement of legislative goals). Of course, to the extent that an employer who is subject to payment of the tax fails to tender payment (either fraudulently or otherwise), there is no question, as footnote 3 in *Anthony* indicates, that "a claimant's eligibility for compensation does not depend upon the employer's having paid premiums," and that employees of such employer should not be rendered ineligible for benefits on that account.

In both this case and *Anthony*, it is undisputed that the employer actually paid the tax.

to an agency's construction of its statute, but more an application of clearly drafted language.

I recognize that, from petitioner's position, the language seems unduly rigid. Perhaps the legislature should take a hard look at the statute to see if a change is warranted.

I would affirm.